## Perry, et al. v. Covington Savings Bank & Trust Company and Tilden Perry.

### Same v. Same.

(Decided March 24, 1922.)

Appeals from Kenton Circuit Court
(Common Law and Equity Division).

1. Process—Warning Order.—The evidence shows that a warning order was actually made by the clerk; but if it had not, the affidavit in the record for a warning order and the clerk's entry on the petition showing the appointment of a warning order attorney authorizes the presumption, in the absence of a showing to the contrary, that the clerk had done his duty and the warning order had been made.

2. Appearance—Pleading.—An answer filed in court in an action seeking to foreclose a mortgage against the joint property of several defendants, part of whom are residents of this state and part or whom are non-residents, the opening words of which are "Now come the defendants herein," enters actual appearance of all defendants, both resident and non-resident.

3. Mortgages—Enforcement of Lien—Interest.—In an action to foreclose a mortgage it is too late one year after the judgment of sale and after the sale has been had and confirmed to raise for the first time the question that the plaintiff had procured a judgment for one year's interest more than it was entitled to.

4. Executors and Administrators—Parties—Decedents' Estates.—It is too late after final judgment to raise the question that no demand had been made as required by law for the payment of a claim against a decedent's estate, and it was too late for the real representatives of the decedent to make the question that the administrator was a necessary party to the action.

5. Trial—Questions Must be Seasonably Presented.—Parties must present their questions seasonably in court and will not be permitted to wait until after the rights of the parties have been finally adjudged and then present issues which it was their duty to make before the entry of the judgment.

6. Mortgages—Setting Sale Aside.—Where a mortgage refers to the property put in lien as one hundred and twenty acres more or less, and it is made to appear long after a judgment of sale and the execution thereof, that the tract of land in fact embraced one hundred and sixty-three and a fraction acres, but it was all embraced in the mortgage and judgment of sale and liable for the payment of the mortgage debt, and the commissioner reported that it was necessary to sell the whole of the land to produce the debt, interest and costs, the sale will not be set aside.

7. Judicial Sales—Setting Aside Order of Confirmation.—Where there is a judgment of sale on the 21st of June which is executed in July, and one of the defendants dies thereafter but before the confirmation of the sale, and the court, in ignorance of her death, enters an order of confirmation, but thereafter sets aside the order of confirmation because there had been no revivor against the devisee of the decedent, the action in setting aside the order of confirmation was only an interlocutory order.

8. Judgment—Final Order—Interlocutory Decree.—A final judgment or order is one which puts an end to the action by granting or refusing to grant the relief the plaintiffs have asked for in their pleadings, and which gives that relief by its own force without further action of the court; while an interlocutory decree is one that leaves some further steps to be taken to enable the court to adjudicate and settle the rights of the parties.

9. Abatement and Revival—Revival.—The purpose of an order of revivor is to bring before the court parties in interest who are not already before it, and if a party in interest is already before the court, and pending the action another party in interest dies and makes the first named party her sole devisee, there is no necessity of an order of revivor because of her death, the devisee being already a party in interest and before the court.

10. New Trial—Filing Answer—Appearance.—The provision of section 414 of the Civil Code that a defendant against whom a judgment may have been rendered upon constructive service of summons, and who did not appear, may, within five years after the rendition of the judgment, move for a new trial, has no application where the non-resident defendants enter their actual appearance by the filing of an answer.

11. New Trial—Interlocutory Order—Confirmation.—An order made granting a new trial to non-residents under the provisions of section 414 is only an interlocutory order, as the section itself contemplates that the court upon the new trial ordered may thereafter confirm the original judgment or modify or set it aside.

12. New Trial—Non-Resident Defendants—Judgment Upon Construc-
tive Service.—A non-resident defendant after filing an answer in
the action is on the same footing as a resident defendant before the
court by actual service, and the provisions of section 414 apply
only to non-resident defendants against whom a judgment has
been rendered upon constructive service and who have not ap-
peared in the action.

CHAS. H. FISK for appellants.

ORIE S. WARE and ELMER P. WARE for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

On the 18th of February, 1901, B. D. Perry became in-
debted to the Covington Trust Company in the sum of
one thousand dollars, evidenced by his two notes of that
date for five hundred dollars each, due in two years and
bearing interest. Simultaneously with the execution of
those notes Perry and his wife, to secure the payment of
same, executed their mortgage to the Covington Trust
Company on a certain tract of land in Kenton county
described therein as "containing 160 acres more or less."
But there was excepted from that tract a certain de-
scribed portion thereof "containing 40 acres, leaving the
amount herein conveyed 120 acres, more or less."

Thereafter the appellee, Covington Savings Bank &
Trust Company, succeeded to all the rights and became
the owner of all the properties of the Covington Trust
Company and on January 29, 1910, appellee filed this ac-
tion against the widow and heirs of B. D. Perry, who had
died in 1905, asking for enforcement of its mortgage lien
and praying for a settlement of Perry's estate.

In the petition it is alleged that all interest on the
one thousand dollars had been paid up to February 12,
1908, although the two bonds or notes filed with the peti-
tion show that the interest had been paid up to the 18th
of February, 1909.

B. D. Perry died in March, 1905, and the settlement of
his administrator made in 1907 shows that he had very
little personal estate and the administrator had paid out
something more than one hundred dollars over and above
what had come to his hands.

B. D. Perry had left a widow and eleven children, all
living either in Kentucky or Ohio. All the resident de-
fendants except Ida B. Elliott were served with process
and thereafter Ida B. Elliott, before the entry of the

judgment hereinafter referred to, by writing signed by her, authorized the entry of her appearance. The endorsement on the petition shows that a warning order attorney was appointed, but no warning order is now in the record or can be found although the evidence of the plaintiffs' attorney seems to make it reasonably clear that in fact a warning order was made at the time the petition was filed and the attorney appointed.

Thereafter the warning order attorney wrote letters to each of the non-resident defendants at the addresses given in the affidavit, some of which were returned to him without having ever been delivered.

The plaintiff, before the entry of the judgment at the June term, 1910, seems to have abandoned its original idea of settling the estate of B. D. Perry, and therefore no process was executed upon his personal representative, and the suit was prosecuted solely against the real representatives of Perry for the purpose of foreclosing the mortgage lien.

On the 21st of June, 1910, the plaintiff entered a motion to submit the case for a judgment and on the same day there was filed in the court an answer, in two paragraphs, the opening words of which are "Now come the defendants herein." In the first paragraph the corporate existence of the plaintiff was denied, and in the second paragraph a right of homestead was asserted for the benefit of the widow of B. D. Perry.

To each of these paragraphs a demurrer was sustained, and the court on that day entered a judgment of sale, directing the 120 acres more or less to be sold, but directed the commissioner to first offer the real estate excluding the house and improvements occupied by the widow as a homestead and to sell the homestead and improvements only in the event the remainder of the land was insufficient to pay the debt, interest and costs.

The property was sold on the 18th day of July, 1910, after due advertisement, and the commissioner first offered the same excluding the house and improvements and received no bid therefor, and then offered the property as an entirety whereupon the plaintiff became the purchaser at twelve hundred and sixty dollars, the property having been appraised at fourteen hundred and forty dollars. Exceptions to the sale were filed by several of the defendants, some of the exceptions signed by the same attorney who had filed the answer for them all, and some by another attorney, and thereafter on the

20th day of June, 1911, the exceptions were overruled and the sale confirmed, whereupon a conveyance was made to the plaintiff for the one hundred and twenty acres more or less of land covered by the mortgage, and on the 28th of June, 1911, the Savings Bank & Trust Company conveyed the same to the appellee, Tilden Perry, one of the children of B. D. Perry.

Thereafter, and on the 28th of June, 1912, the administrator filed his affidavit that he had never been served with process as administrator and had never appeared in the action and that no demand for payment of the claim alleged to be due the plaintiff was ever made upon him as administrator before the institution of the action, accompanied by the affidvait required by law, and moved to dismiss the action; and on the same day certain of the non-resident defendants and the administrator and the widow moved to file an answer and cross petition and moved to dismiss the action and vacate and set aside the judgment and order of sale and the deed executed and delivered thereunder.

For the first time during the pendency of this motion to vacate the judgment it was ascertained by survey that the land sold as one hundred and twenty acres more or less, after excluding the forty acre tract, in fact was one hundred and sixty-three and a fraction acres, and for the first time attention was called to the fact that the interest on the one thousand dollars had been in fact paid up to 1909 instead of 1908, and for the first time it appeared in the record that between the date of the judgment of sale in June, 1910, and the sale in July, 1910, and the order of confirmation in June, 1911, that one of the defendants, Ida B. Elliott, had died, her death having occurred on the 28th day of November, 1910. But it further appears as to this last occurrence that neither the plaintiff nor its attorneys knew of the death of Ida B. Elliott until after the order of confirmation although it was well known to all the defendants.

It further appears, however, from the will of Ida B. Elliott, that her sister, Martha Perry, one of the defendants to this action, was her sole devisee and was before the court at all times since shortly after the filing of the action.

The court, on July 14, 1914, entered the following order:

"It appearing from the pleadings that Ida B. Elliott died after the judgment and order of sale, and before its

confirmation, and that there was no revivor against her devisee, Martha Perry, it is adjudged that the confirmation of the sale and subsequent orders based upon said confirmation are void for want of revivor against Martha Perry. It is further adjudged that the judgment and order of sale herein are erroneous as to the non-residents, Amanda Denny, Doc Denny, Elmira Nuss, Sallie Southards and Mort Southards in that said judgment for which the sale was had was for a greater sum than was due the plaintiff and that a new trial be granted them.''

After the entry of this order in July, 1914, the record fails to disclose that any steps were taken by either party until February 17, 1917, at which time the defendants filed an amended answer, counterclaim and cross petition wherein they treated the whole judgment, order of sale, confirmation thereof, and all proceedings as void because of the entry of the order of July 14, 1914, above quoted. They alleged that the plaintiff and the defendant, Tilden Perry, had been, since June, 1911, in the possession of the tract of mortgaged land, had sold large quantities of timber therefrom, and seek to charge them with the rental value thereof during that period, the rent and damages so asserted amounting to $4,277.50, leaving, after paying the amount of the judgment, $2,797.50, for which they pray judgment against the plaintiff and the defendant, Tilden Perry.

The issues were made along the lines indicated and voluminous evidence taken and on October 28, 1918, the chancellor filed an opinion and entered a judgment setting aside so much of the order of July 14, 1914, as held the confirmation of the sale to be void for want of revivor against Martha Perry, the sole devisee of Ida B. Elliott, and overruling the motion to set aside the judgment and order of sale or the order confirming the sale, and dismissed the answer and cross petition of the defendants.

And that is the first judgment appealed from herein.

Thereafter, on the 7th of November, 1918, the defendants filed what they term a motion and grounds for a new trial which motion was, on July 7, 1919, overruled and from that last named order the second appeal is prosecuted.

A multitude of questions of fact, procedure, practice and law are discussed in the very elaborate printed briefs on file, but the above statement of the case will indicate that there are but few things that need to be discussed to determine finally this prolonged litigation.

First, were all the children of B. D. Perry before the court when the judgment of sale was entered?

Second, was it too late one year after the judgment of sale and nearly a year after the actual sale and after there had been an order of confirmation to raise for the first time the question that the plaintiff had procured a judgment for one year's interest more than it was entitled to?

Third, was the administrator of B. D. Perry a necessary party to an action by a mortgage holder against his real representatives to foreclose the mortgage, it being made to appear that before the suit was instituted his personal estate had been settled and was insufficient for the payment of his other debts?

Fourth, is the fact that it was disclosed long after the judgment of sale and long after it was executed and long after the purchaser had taken possession that what was described in the mortgage as one hundred and twenty acres more or less was in fact one hundred and sixty-three acres and a fraction, sufficient to authorize the court to grant a new trial and set aside the judgment and order of sale?

Fifth, was the order of July 14, 1914, merely an interlocutory order or was it a final judgment?

1.    There is much discussion in the briefs as to whether a warning order was ever actually issued, but in our view of the record it is entirely unimportant. It may not be improper, however, to say that while no warning order is found among the papers there is an affidavit for a warning order and the clerk's entry on the petition the day it was filed shows the appointment of a warning order attorney who made his reports as such. Not only so, one of the attorneys testifies distinctly that a warning order was at the time made and was thereafter lost from the papers. Even without the testimony of the attorney the fact that the affidavit for a warning order was filed and that the warning order attorney was appointed would seem to authorize the assumption, in the absence of a showing to the contrary, that the clerk had done his duty and that the warning order had been made. Wallace v. Lackey, 173 Ky. 140.

It is therefore apparent that each of the non-resident defendants, even before the actual entry of appearance by them in the filing of an answer on the 21st of June, 1910, were already before the court by constructive service.

But even if no warning order had ever been entered and it was so conceded, each and all of the defendants by their joint answer filed on the 21st of June, 1910, before the entry of the judgment of sale, actually entered their appearance in person by an answer prepared and filed by a reputable attorney of the Covington bar and signed and sworn to by one of the defendants and that defendant the son who was the administrator of B. D. Perry, deceased.

The evidence of the attorney who filed the joint answer for all of the defendants shows that he had authority in person or through correspondence to represent all of the defendants, and the record discloses that thereafter he filed exceptions for two or more of them to the report of sale and filed several affidavits of different defendants in support of the exceptions.

It is therefore perfectly clear that the non-resident defendants were before the court by constructive service prior to the time they actually entered their appearance by the filing of the answer on the 21st of June, 1910.

2. In the answer filed on the 21st of June, 1910, there was no suggestion made of the fact that the plaintiff had by inadvertence in its petition asked for one year's interest too much, and all that need be said on this question is that the parties defendant were all *sui juris* and before the court, and no appeal has ever been taken from that judgment.

It would be unnecessary to waste energy in discussing whether under these circumstances the judgment was void.

3. It is wholly unnecessary to discuss the question whether George W. Perry, administrator, was or not before the court, for the action proceeded, as disclosed by the record, only as one to foreclose a mortgage lien, and as the petition showed there was no personal estate out of which to pay the debt a demand upon the personal representative would have been a perfectly futile procedure.

Not only so, it was too late after final judgment to raise the question that no demand had been made, and it was too late after judgment for the real representatives of the decedent to make the question that the administrator was a necessary party.

Under our laws of procedure parties must present their questions seasonably in court and are not permitted to wait until the rights of the parties have been finally ad-

judged and then, for the first time, make questions and present issues which it was their duty to make and present before the entry of the judgment.

4. Long after the entry of the judgment of sale and long after the sale had been confirmed the defendants procured an order of survey from the court and that survey for the first time demonstrated that what was described in the mortgage as one hundred and twenty acres more or less, after excepting therefrom the forty acres specifically described, contained one hundred and sixty-three and a fraction acres, and from this it is argued that the plaintiff by his purchase at the sale of the tract described in the mortgage as one hundred and twenty acres more or less actually got exceeding forty acres more than he purchased and therefore the sale should have been set aside.

But whatever the acreage may have been it was all embraced in the mortgage and judgment of sale and was each and every part of it liable for the payment of the mortgage debt. It was appraised at fourteen hundred and forty dollars whether it was one hundred and sixty-four acres or one hundred and twenty acres and the purchaser bought it as a whole without regard to the acreage.

It all having been embraced in the mortgage, it all being liable to the payment of the mortgage debt, the court having adjudged it as a whole to be sold if necessary to pay the debt, and the commissioner having found it to be necessary that it should all be sold, and having sold it as a whole and the purchaser having bought it as a whole without knowledge of the excess in acreage, but presumably knowing the property he was buying, he acquired title to the whole of it without regard to the acreage.

It appears that B. D. Perry had lived for forty years or more on this tract of land and that each of the defendants, his children, had been reared there and were familiar with the tract of land and surely they had better means of knowing than the plaintiff the actual acreage, and so knowing it was their duty before the judgment and before the sale to take steps to protect themselves against such a situation.

In this whole record they are in the attitude of making belated defenses which even if in the first place they had been authorized by the law or the facts to make, are now wholly out of date, and for the first time presented after the rights of the parties had been adjudged.

5. The order of July 14, 1914, is in two paragraphs. The first paragraph adjudges that because of the death of Ida B. Elliott after the judgment and sale and before the order of confirmation the order of confirmation and all subsequent orders based thereon were void because there had been no revivor against Martha Perry, the sole devisee of Ida B. Elliott.

The second paragraph of the order adjudges that the judgment and order of sale are erroneous as to the non-resident defendants because the judgment was entered and the sale was had for a greater amount than was due the plaintiff, and therefore granted them a new trial upon the presumption that they were non-resident defendants before the court only upon constructive service and had not appeared in the action.

In the judgment of October 28, 1918, the chancellor being of opinion that the order of July 14, 1914, was only an interlocutory one, set aside so much of the same as held the confirmation of the sale to be void for want of revivor against Martha Perry and overruled the motion of all the parties, including the non-residents, to set aside the judgment and order of sale and entered an order confirming the sale.

Manifestly, the vital question in the whole case is whether the order of July 14, 1914, is or is not a final order, for if it is the court had no power in its judgment of October, 1918, to set it aside, but if it is only an interlocutory order then it was within its power to enter the judgment setting it aside.

It will be observed that the order of July 14, 1914, does not set aside or undertake to set aside either the judgment of sale or the sale held thereunder, but merely adjudges that the order of confirmation of the sale and the subsequent orders based thereon are void for want of revivor against Martha Perry. The effect of this order was to leave a judgment which had been entered, and a sale which had been held, and a report of sale which had been made, pending in court for future action until there could be a revivor against Martha Perry, the sole devisee of Ida B. Elliott, so she should have opportunity to show reason why that sale should not be confirmed. In other words, it only held up the question of whether there should finally be a confirmation of the sale until after the revivor was had.

A final judgment or order is one which puts an end to the action by granting or refusing to grant the relief the

parties have asked for in their pleadings, and which gives that relief by its own force without further action by the court; while an interlocutory decree or order is one that leaves some further steps to be taken to enable the court to adjudicate and settle the rights of the parties. Hartford Fire Insurance Company v. McDonald, 177 Ky. 838; The Trade Discount Company v. Cox & Company, 143 Ky. 515.

It is perfectly clear that the order of July 14, 1914, did not finally adjudicate the rights of the parties in this action; its only effect, as heretofore pointed out, was to set aside the order of confirmation previously made because of the death of one of the defendants before that order of confirmation was made, but after the sale.

No revivor against Martha Perry, the sole devisee of Ida B. Elliott, has ever been had, but the court in its opinion upon which the judgment of October, 1918, is based, took the ground that no order of revivor was necessary against Martha Perry as the sole devisee of Ida B. Elliott for the reason that Martha Perry was already a defendant in the action, *sui juris,* and before the court, and was of opinion that under the rule laid down in Larrabee v. Larrabee, 24 R. 1423, no order of revivor was necessary.

In the Larrabee case, referred to, one of the defendants, Hattie Lee Larrabee, died and left a will wherein her mother, Harriet B. Larrabee, was the sole devisee. There was no order of revivor against Harriet B. Larrabee and there were exceptions filed to the sale on that account. The court in response to those exceptions said:

"There was no necessity for the order of revivor after the death of Hattie Lee Larrabee because her mother, Harriet B. Larrabee, was the sole devisee under her will. The object of an order of revivor is to bring before the court parties in interest who are not already before the court, and as the only person interested in the estate of Hattie Lee Larabee was already before the court, in the vigorous prosecution of the case, the law does not require the doing of a vain and useless thing."

The rule thus stated in the Larrabee case, which clearly and distinctly applies to the facts here, is on its face so sound and sensible as to need no exposition or elucidation. In this case Martha Perry was the sole devisee of Ida B. Elliott, her sister; they were each *sui juris* and before the court in an action seeking to enforce a lien against their joint property; in that situation after

the entry of the judgment and after the sale of the property but before the confirmation of the sale Ida B. Elliott died and left Martha Perry her sole devisee, and it seems to go without saying that Martha Perry, without an order of revivor, was before the court for all purposes, not only as an heir-at-law of her father but as sole devisee of her deceased sister, Ida B. Elliott, and in both capacities she was bound by the judgment and the orders of the court. On its face it would seem to be a useless procedure to bring before the court again a party already before the court, merely because she had, pending the action, become more largely interested.

We have no doubt of the power of the court in its judgment of October, 1918, to set aside its order of July 14, 1914, wherein it had erroneously held that an order of revivor was necessary against Martha Perry.

As to the non-resident defendants, the court, in the second paragraph of the order of July 14, 1914, adjudged that the judgment was erroneous because it was for a greater sum than was due and, accordingly, granted them a new trial. This action of the court evidently was based upon the provisions of section 414 of the Civil Code, the court at the time of its entry being under the impression that the non-residents were only before the court by constructive service and had never appeared in the action.

Section 414 of the Civil Code in part provides:

"A defendant against whom a judgment may have been rendered upon constructive service of a summons, and who did not appear, may, at any time within five years after the rendition of the judgment, move to have the action retried; and, security for the costs being given, shall be admitted to make defense; and thereupon the action shall be retried, as if there had been no judgment; and, upon the new trial, the court may confirm the judgment or modify or set it aside."

It will be observed that the order of the court on this branch of the case adjudges only that the judgment and order of sale is erroneous as to non-residents and grants them a new trial; there is no effort to set aside the judgment or the sale, but the court being under the impression that the non-resident defendants were only before the court by constructive service and had not appeared in the action entered this order, as is required by section 414, giving them a new trial because of its opinion the judgment was for too great an amount. It did not pass finally upon the rights of anybody; it did not set aside

the judgment or the sale, but only gave to the non-resident defendants a new trial to the end that they might show that the judgment was for too great an amount.

But when the court came, after long and elaborate preparation, to enter its judgment of October, 1918, it found that the order of 1914 had been entered under a misapprehension of the facts and that the non-resident defendants to whom that order had granted a new trial were not in fact entitled to it for the very plain reason that they were in fact before the court at that time because of the entry of their appearance in the filing of their answer and were not merely constructively before the court as contemplated in section 414. Its action, therefore, in the judgment of October, 1918, in setting aside the order granting a new trial in 1914 was entirely proper.

The non-resident defendants after the filing of their answer in June, 1910, were on the exact footing of the resident defendants who were before the court by actual service, and as section 414 applies only to defendants "against whom a judgment may have been rendered upon constructive service of a summons, and who did not appear" there can be no question of the correctness of the court's action in setting aside the order granting them a new trial.

There were many other questions of practice and procedure argued in this case which we have deemed it unnecessary to discuss, but it is not amiss to say that the charges of fraud and sharp practice against the counsel for plaintiffs in procuring a judgment for too large an amount and in other respects, are, so far as this record discloses, wholly unfounded.

The judgments are each affirmed.