# Vanover v. Ford.

(Decided October 11, 1929.)

RUSSELL VANOVER for appellant.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On July 12, 1912, Roscoe Vanover borrowed from John W. Ford $5,000, for which he executed his note payable 12 months thereafter, and to secure it he and his wife, Martha Vanover, executed a mortgage on certain real estate in Pike county. Ford died testate in 1924, and his widow, Elizabeth Ford, was designated in his will and qualified as executrix of his estate; but so far as we are able to discover from the record there is nothing contained therein as to the contents of Ford's will or to whom he devised his property—questions that become important later.

On March 2, 1925, as such executrix, Mrs. Ford filed this action against Roscoe Vanover to recover the balance due on the note so executed to her intestate and which balance, with interest, amounted to approximetely $750, the last payment of $500 having been made on October 15, 1921. The action also sought the enforce-

ment of the mortgage lien on the land described in the mortgage of Vanover and wife. The answer, filed by Vanover in person, admitted his execution of the note to Ford and the payments made thereon, but denied that any balance was due thereon, for the reasons stated in subsequent paragraphs of the answer, which were: (1) An offset for attorney's fees and legal services rendered by defendant to Ford amounting to more than the balance of the note, and (2) that the note was originally executed for the purpose of procuring money with which the defendant was to and did purchase votes in his race against one Butler for the office of circuit court judge in the judicial district of which Pike county was a part, and that Ford knew and consented to the purpose for which the money was borrowed and knew that Vanover later used it for such unlawful purpose. Proper pleadings made the issues, and upon final submission on January 26, 1929, the court rendered judgment for the balance due on the note and directed that a sufficiency of the mortgaged land be sold by the master commissioner for the purpose of liquidating the judgment, and from it the personal representative of Vanover (his wife) prosecutes this appeal.

It is first insisted that the court erroneously determined the issues of fact made by the pleadings upon the only two issues involved, which were: Whether Ford was indebted to Vanover for legal services and, if so, in what amount, and whether Ford knew of the unlawful purposes for which the money was borrowed and that it was so used by the borrower? It would serve no useful purpose to undertake to rehearse the testimony on those two issues. Upon issue (1) it consisted almost exclusively of the testimony of Russell Vanover, the son and partner of Roscoe Vanover, and his evidence was entirely insufficient to authorize a recovery of any sum for performed and unpaid for legal services. It appears to be a fact that Vanover had been, at least in some matters, the attorney for Ford before his election to the office of circuit judge of his district, but after that time Ford employed other counsel in his legal matters, as he was compelled to do, and there is but scant, if any, evidence that Vanover rendered any legal services to Ford thereafter. Moreover, there is nothing in any testimony found in the record by which any specific or definite sum could be arrived at, even if it was clearly shown that such services

had been rendered and not paid for. To say the least of it, we shall on this issue yield to the judgment of the chancellor disallowing a recovery, since it is clearly apparent that his finding on that issue is of such a nature as to not authorize us under the thoroughly established rule on the subject to interfere with his judgment.

The same comments also apply to the judgment of the trial court on issue (2), i. e., that the note was executed to obtain money for unlawful purposes and that it was so employed with the knowledge of Ford. The extreme extent to which the testimony on that issue might be stretched is that Vanover, with the knowledge of Ford, intended to use the money in the prosecution of his campaign for circuit judge; but there is no testimony whatever that Ford afterwards knew that it was so used, much less that it was corruptly done. At that time our statute commonly known as the Corrupt Practices Act (Ky. Stats., sec. 1565b1 et seq.) had not become a law and there was no limitation upon the amount that a candidate for circuit judge might legally employ in the prosecution of his campaign, and, therefore, it cannot even be said that Ford was cognizant of, or a party to, the expenditure by Vanover of a larger sum in prosecuting his campaign than that allowed by law.

At the time the proof was taken Roscoe Vanover had died, and whether or not he used any of the proceeds of the note for the purpose of corrupting voters is not disclosed by the record, except arguendo from inferences to be drawn from the proof. But, if it were otherwise, then there is an absolute dearth of proof showing any knowledge or consent of Ford that the money borrowed from him should be so employed, and the court properly determined this issue of fact against defendant.

The only other question relied on for a reversal, and the only one that we regard as possessing any merit, has reference to an order of revivor appearing in the record. Before any evidence was taken by either side, both plaintiff and defendant died, and within a short time and less than a year after their deaths, and on November 9, 1927, the court entered this order: "Since the last term of this court, the defendant, Roscoe Vanover, departed his life, testate, devising his property to the defendant, Martha Vanover, and making her sole executrix. That since the last term of the court, Elizabeth Ford, Ex., departed her life testate, devising her property to her descendants and making Myrtle Ford Polley,

executrix, and J. M. Yost, Trustee. By consent, it is ordered that the case be revived and stand revived, in the style Myrtle Ford Polley, Ex., etc., plaintiff v. Martha Vanover, Ex., etc., defendants, and this cause is continued."

Intervening between that term and a special term held in January, 1929, at which the cause was finally submitted and determined, there were at least two regular terms of the Pike circuit court at which various motions were made and orders taken, among which was one by defendant's attorney to continue the cause so as to enable him to take his proof, which later he did. After the expiration of one year from the deaths of the original parties (one of which occurred in September, 1927, and the other in October of the same year), and on January 21, 1929, defendant's counsel moved the court to dismiss the action because plaintiff died more than one year from that date "and no amended petition or affidavit has been filed suggesting her death and this cause has not been revived." On the 25th day of the same month he filed written motion to set aside the above inserted order of revivor upon the ground that "same is a fake order" and that "the record in this case showing that no amended petition, affidavit, or other pleading was ever filed suggesting the death of the plaintiff, Elizabeth Ford," and counsel filed his affidavit in support of that motion which was everruled by the court. In his affidavit he states that he purposely waited to make those motions until after the expiration of one year from the death of Mrs. Ford so that the time would pass within which a revivor might be made. He likewise states in his affidavit that *he* never agreed to the above order of revivor, although it will be observed that he made no objection to the revival of the cause in the name of his mother as personal representative of his father, although the latter predeceased the original plaintiff one month.

It is nowhere stated in the affidavit of counsel that *his client* never consented or agreed for the order of revivor to be made in the terms in which it is framed, but he does call upon opposing counsel in his affidavit to produce any agreement made either by himself or his client that the order of revivor as framed might be entered. Of course, he is presumed to be aware of the fact that a motion for a revivor may be by parol, if consented to by the opposing litigant who is sui juris, or by his attorney, and while counsel denied in his affidavit that *he* ever

agreed or consented to the order of revivor which he sought to set aside and to dismiss the action, he does not state that his client did not so agree or consent, and under a familiar rule of practice we will indulge the presumption that the consent of the client was obtained.

But counsel insists that, notwithstanding such consent, the order of revivor was void and for that reason the court should have sustained his motion to set it aside and dismiss the action because it was not revived in the name of the proper person. It will be observed from a reading of the order that, instead of the action being revived in the name of any succeeding representative of Mr. Ford, or in the name of his heirs, it was revived in the name of the personal representative of his widow who filed the action as his personal representative, and numerous cases from this court are cited to the effect that a revivor in the name of a personal representative of a personal representative is insufficient. If nothing else appeared in the case to relieve the situation from the consequences of that rule, this objection would have to be sustained. In none of the cases, announcing the principle upon which defendant's counsel relies, did it appear that the objection to revivor was made by agreement and consent of parties. It is universally held, so far as our diligent search reveals, that any of the requirements of the practice governing the reviving of actions in the name of or against succeeding deceased, or otherwise disqualified litigants, may be waived by the opposing party, and when done the prescribed rules to obtain a revivor need not be followed. An illustration of which is the requirement of notice, which the text in 1 C. J. 247, sec. 540, says may be waived by consent, and it was so held by this court in the cases of Pugh v. Bell, 1 J. J. Marsh, 399; Roberts v. Elliott, 3 T. B. Mon. 395, and in the case of Patterson v. Patterson, 13 Ky. Law Rep. 239, which was a superior court opinion.

There is nothing in our Civil Code of Practice (sections 500 to and including 512) which gives a public policy coloring to any of the requirements contained therein. They are all enacted exclusively for the private benefit of the involved litigants, and, that being true, we are unable to find any objection to a litigant waiving any of them if he sees proper to do so, and especially should that be true in a case like this, where no objection was made to the alleged defective order of revivor until the expiration of the time for it to be made, and which mis-

leading acquiescence and silence are expressly stated to be for the purpose of extending the time beyond the period within which the revivor might be made. To uphold counsel's contention would put a premium upon such practice which neither this court nor any other should tolerate, unless the failure to do so would contravene some principle of public policy, but which, as we have seen, does not enter into the question here involved.

Moreover, in the cases of Larrabee v. Larrabee, 71 S. W. 645, 24 Ky. Law Rep. 1423, and Perry v. Covington Savings Bank & Trust Co., 195 Ky. 40, 241 S. W. 850, we held that it was not error to revive an action in the name of a personal representative of a deceased personal representative, instead of the succeeding representative of the original deceased to whom the cause of action belonged, when the person in whose name the revivor was made succeeds to all the rights of the decedent of the first representative in whose name the action was originally brought. Applying that principle to the facts of this case, if, under the will of Ford, his widow, who as his personal representative filed the action, was made his sole devisee, thus entitling her to maintain the action individually, then a revivor in the name of her personal representative (which was done by consent in this case) would be neither erroneous nor irregular. The parties, as we have shown, consented to reviving this action in the name of Mrs. Ford's personal representative, and the court made that consent its judgment. Under the familiar and well-established rule that presumptions will be indulged in favor of the actions of courts of general and original jurisdiction, and that for one to impeach them the impeaching facts must affirmatively appear, we feel authorized to presume in this case (in the absence of facts showing to the contrary) that the court had authority for its order of revivor and that the parties had grounds for giving their consent thereto, and which would be true if the will of Mr. Ford was as above indicated.

We, therefore, conclude that, for the reasons stated, the court did not err in overruling the motion to set aside the consent order of revivor, nor in refusing to dismiss the action for lack of proper revivor, and the judgment is, therefore, affirmed.