## Adkins v. Carol Mining Co. et al.

Jan. 16, 1940.

Waugh & Howerton for appellant.

Clyde R. Levi and Caldwell & Gray for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing in part and affirming in part.

This appeal presents two questions for our decision. The first or preliminary question is as to whether the judgment here sought to be reversed by appellant was a final order and therefore appealable, while the second or major question raised on the issues and presented is as to the priority or preference of lien as between appellants, compensation and labor claimants, and the lessor, American Rolling Mill Co. (appellee), against the property and effects of the insolvent lessee, Carol Mining Co., which have now come to be distributed among its creditors.

The facts as pleaded are that on October 30, 1926, the American Rolling Mill Co. executed a coal mining lease on certain land in Boyd county to J. H. Rhodemyre, trustee, who on April 11, 1927, assigned it to the Carol Mining Co. Under the heading of "Default and Forfeiture," it is provided in the lease as follows:

"All terms, covenants, provisions and agreements herein contained shall be deemed conditions, and it is hereby agreed that in the event of default by lessee to keep or perform any of same the lessor may, at its option, give written notice to lessee, or to lessee's agent in charge of the premises, that at the expiration of thirty (30) days, if the default be not removed or corrected within said period, the lessor will declare this lease, and all rights and privileges thereunder, forfeited and same shall thereby become null and void, lessor having the right thereupon to re-enter and take possession of said leased premises. * * *"

On May 31, 1927, the parties adopted an amendment to the lease, providing that if lessee or assignee were not in default for rent or royalties upon the expiration or termination of the lease, the lessee would have the right to remove from the premises all houses, buildings and other improvements placed thereon by it.

On November 18, 1935, they adopted a further amendment, providing that:

"1. The minimum rental of Two Thousand Five Hundred Dollars * * * per year shall be payable monthly, for each calendar month, in twelve equal installments.

"2. The royalty for all coal mined and shipped within each calendar month shall be accounted and paid for on or before the twentieth day following the end of such month.

"3. Default in payment of royalty for more than thirty days after same becomes due shall entitle lessor, at its option, to declare this lease forfeited and to re-enter and take possession of the leased premises."

The Carol Mining Co., as assignee of the lease, took possession of the property and proceeded with the operation of a coal mine thereon under the terms of said

lease. However, it having defaulted in the payment of the stipulated monthly rentals and royalties for some eleven consecutive months, its lessor, the American Rolling Mill Co., brought this action in December, 1938, seeking recovery of the rentals and royalties in default, amounting to $2,324.98. The petition alleged lessee's insolvency and breach of the terms of the lease, and joined, as defendants, the appellant and two other employees of the insolvent mining company holding unpaid compensation awards and numerous other employees having labor claims, and concluded with the prayer for judgment against its lessee in the sum stated, with interest; that the lease be declared forfeited; that an order of injunction be issued restraining defendant lessee and its agent from mining and removing coal from the premises or trespassing thereon; that a general order of attachment be issued against the property of defendant; and that the named compensation and labor claimants be required to answer and assert their interests against the lessee's property located on or used in the mining operation. Further, the petition prayed that plaintiff be adjudged a lien upon all the property and equipment of its lessee, the mining company, prior and superior to any and all other liens whatsoever.

Thereupon the appellant, Wiser Adkins, together with two other compensation claimants and several labor claimants, made defense to the action by filing answer, counter-claim and cross petition, setting up their respective compensation and labor claims and asserting their statutory liens therefor against the assets of their insolvent employer, the Carol Mining Co., which had come into the hands of the court for distribution, as contemplated under the provisions of Section 2487, Kentucky Statutes.

The answering defendant, Adkins, prayed for a judgment against his insolvent employer for the whole amount of the compensation award ($4,992) made him by the Compensation Board for injuries received in the course and arising out of his employment by the said mining company, and further asked that he be adjudged to have a prior and superior lien, over all other claimants, on the property and effects of his insolvent employer, except those for labor and compensation, to secure him in the collection of the whole of his award.

Further, he prayed, as sought in lessor's petition, that a receiver be appointed to take charge of the prop-

erty, to hold and preserve it until further orders of the court, and that same be sold and the proceeds thereof applied to the payment of the claims against the defendant mining company and for all proper relief.

A brief summary of these pleadings is that the appellee, American Rolling Mill Co., as lessor of the insolvent Carol Mining Co., is claiming and asserting a prior and superior lien upon its mine effects and assets, based upon the terms of its lease contract, while the appellant, Adkins, is asserting a lien, prior and superior to all others, except as to his co-defendants, against the assets and mine effects of his insolvent employer, the Carol Mining Co., for the whole of his compensation award made him for injuries received while in said mining company's employ, when operating under the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq.

It thus appears that the only issue made by the pleadings is as to who, the lessor or the compensation and labor claimants, has priority of lien and its extent against the assets of the insolvent mining company for the payment of their respective claims.

Demurrers were filed by the plaintiff lessor to the claims of priority of lien asserted by the compensation and labor claimants in their answers, when, the cause being submitted, the trial court adjudged plaintiff practically all the relief sought by its petition, except as to the question of priority and extent of its lien, as to which it adjudged that to secure the payment of its rent debt, the American Rolling Mill Co., "the plaintiff, has a lien upon all of the property of the defendant Carol Mining Company situated on the said lease premises, which lien is prior to all other liens or claims of creditors except the claims asserted herein for wages coming due to employees within six months next prior to December 22, 1938, (when the mining company (lessee) closed down) *and that part of the workmen's compensation claimants' awards accruing within said six months period.*" Further, it was adjudged that as "the claims of liens for wages and awards of workmen's compensation asserted herein by the various intervenors and cross-defendants in the aggregate exceed the probable value of the property of the defendant, and that said property, which consists of mining machinery and equipment, is depreciating in value, and will further depreciate pend-

ing final adjudication of this action, it is now ordered that * * *, Master Commissioner of this Court, shall sell said property at pubilc sale * * * to the highest and best bidder" after duly advertising said sale. Further, the court directed the master commissioner, in advance of advertising the sale of the property, to inspect the leased premises and the property located thereon to determine what is the property of the defendant and to make and file an itemized list and description thereof, with due notice to all counsel in the action. Further, the court ordered that if any exceptions were filed either to the inclusion or exclusion of any property in or from such list, such contested items were not to be included in the sale, but that their disposition was to be reserved pending further orders of the court; that the property should be sold free of liens and that all liens herein asserted by the various parties shall attach to the proceeds of said sale to the same extent and in the same order of priorities as same attached to such property itself. Further, the judgment directed the commissioner to make due report of this sale as required by law.

To all of this judgment the defendants, Wiser Adkins, Raymond Alexander and Gaylor Alexander, objected and excepted.

The concluding clause of the judgment is that:
"This cause is reserved for further proceedings and the adjudication of the several claims and priorities of the liens of the various parties, intervenors and cross-plaintiffs."

We have here set out with some detail the court's judgment, deemed needful for a clear understanding of the factual basis of the first question presented upon the appeal, that the same should be dismissed because the judgment appealed from was not a final but merely an interlocutory order, and that therefore appellant was without right to prosecute his appeal therefrom.

The appellee's contention in this is based upon the provision of the judgment that if exceptions are filed to the commissioner's itemized list of the personal property or effects of the defendant mining company found on the property, such contested items should not be included in the sale, but reserved, pending the further orders of the court and also the judgment's final provision reserving the cause for further proceedings and the

adjudication of the several claims and priorities of the liens of the various parties, etc.

Appellant answers that the judgment having definitely granted plaintiff all the relief sought by it against the defendant, in adjudging it recovery of its debt sued for, with lien to secure its payment upon all the property of its lessee, the mining company, and further adjudging said lien superior and prior to all other liens or claims of creditors except those of labor claimants for unpaid wages and workman's compensation awards accruing within the six months' period next prior to December 22, 1938, and directing a sale of the property to satisfy said liens, with directions for carrying it into effect, and that the property be sold free of liens and that all liens asserted by the parties should attach to the proceeds of the sale, the same as they attached to the property, clearly must be held a complete or final judgment, or as one which effectually settled the rights of the parties and put an end to the controversy between the appellant and appellee as to the priority and extent of their liens against the property and assets of the insolvent mining company, which had come to be distributed among its creditors.

We are led to conclude, when testing the character of this judgment and order of sale, to determine whether it is final or interlocutory, by the rule and principles announced in our repeated decisions of this question, that this judgment must be held to be a final one and appealable, in that it effectually settles the rights of the parties and puts an end to their controversy.

The fact that the judgment concludes with the reservation of the cause for further proceedings for carrying into effect the judgment does not alter or destroy the finality of the adjudication made upon the one real issue presented, which was as to the priority of lien asserted against the mining company's assets both by appellant and appellee for the payment of their claims.

In Kentucky Heating Co. v. City of Louisville, 178 Ky. 424, 198 S. W. 1150, 1152, there is quoted with approval the definition of a final order or judgment given by this court in the case of Maysville & Lexington R. Co. v. Punnett, 15 B. Mon. 47, 54 Ky. 47, which is as follows:

"A final order either terminates the action itself, decides some matter litigated by the parties, or operates to divest some right, in such a manner as to

put it out of the power of the court making the order, after the expiration of the term, to place the parties in their original condition.''

Further, there is quoted in the Heating case, supra, the definition of a final order or judgment appearing in the case of Turner v. Browder, 18 B. Mon. 825, 57 Ky. 825, which is as follows:

"The distinction between interlocutory orders or judgments and those which are final is thus defined by Blackstone:

" 'Interlocutory judgments are such as are given in the middle of a cause, upon some plea, proceeding or default, which is only intermediate, and does not finally determine or complete the suit.

" 'Final judgments are such as at once put an end to the action, by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for. * * *'

"The same distinction has been invariably adhered to by this court." (See supporting cases cited.)

In the very recent case of Johnson v. Beattie et al., 265 Ky. 264, 96 S. W. (2d) 762, there was involved a suit for forfeiture or release for failure of the lessee to pay rent, taxes, etc., and prayer for the foreclosure of the lien. Other lienholders were parties and the question became one of the superiority of liens, as is here the case.

On submission, the lower court found that the lessee was indebted to the lessors in the rent sum and unpaid taxes sued for and that the lessors had a lien against the leasehold and improvements to secure the payment of the judgment and also that such lien was superior to any lien or claim of the lessee or bondholders and that the lien of the defendants, if any, should attach to the proceeds of the sale in the same manner and to the same extent and priority as they existed against the property ordered sold. The property was sold on February 6, 1933, according to the terms of the judgment and on April 15 an order was entered retaining the case on the docket for all "further necessary and proper orders."

In stating and deciding the contentions of the parties, the court said:

"It is the contention of appellees that the judg-

ment of December 17, 1932, was a final order determining the issues and rights of all parties and is now not reviewable by this court because no appeal was taken therefrom. On the other hand, it is the contention of appellants that the judgment of December 17, 1932, merely fixed the priority of liens and was not final until exceptions thereto were overruled as directed by the orders of April 1 and 15, 1933, and to support its contention it relies on the rule enunciated in the cases of Skillman v. Frost's Ex'rs, 4 Ky. Law Rep. 621, Harris v. Tuttle, 62 S. W. 729, 23 Ky. Law Rep. 220, and cases therein cited, and also the case of Buckley v. Buckley, 251 Ky. 271, 64 S. W. (2d) 593:

"In Harris v. Tuttle, supra ,it was held that an order merely adjudging a priority of liens, but without ordering a payment of funds to lienholders, is not a final order and not appealable. * * *

"In the present case the judgment entered December 17, 1932, not only definitely settled the issues between the parties with respect to the lessors' lien against the leasehold and improvements thereon under the lease contract, but also specifically ordered the property sold *in satisfaction of the lessors' judgment,* which was tantamount to ordering a distribution of the funds to the lessor lienholders, and the only purpose of retaining the case on the docket was to enforce the judgment. Brown v. Vancleave, 86 Ky. 381, 6 S. W. 25, 26, 9 Ky. Law Rep. 593. See, also, Blackburn v. Blackburn et al., 200 Ky. 310, 254 S. W. 915, wherein it was held that 'final judgment' is one that definitely settles the rights of the parties and puts an end to the controversy between them and gives to the successful litigant the relief sought, and the retention of the case on the docket for the purpose of carrying the judgment into effect is administrative only and the judgment is nevertheless final."

See also Hearn, Lee & Pinckard v. Lander, 11 Bush. 669, 74 Ky. 669.

Also, appellant cites and relies upon the case of Wilcoxen v. Farmers' National Bank, 225 Ky. 764, 10 S. W. (2d) 298, 299, as supporting his contention that the judgment he here appeals from was a final one.

There, in speaking as to the character of judgment

appealed from, as to whether final or executory, the court said:

> "The original judgment may be considered as being in two parts, easily differentiated—the one judicatory in its nature and undoubtedly final, awarding a personal judgment for the debt and adjudging the bank to have a lien on the property, and the other, which is executory, directing the commissioner to sell the land in a certain manner in satisfaction of the decree so awarded. This part of the judgment was merely an interlocutory order, as further steps were required to enable the court to settle the rights of the parties. Perry v. Covington Savings Bank & Trust Co., 195 Ky. 40, 241 S. W. 850; Hartford Fire Insurance Co. v. McDonald, 177 Ky. 838, 198 S. W. 225."

The judgment before us very effectively and definitely adjudges the rights of the parties in respect to the one controversy between them—that is, as to the priority of their respective liens against the mining company's assets. Such being the character of its adjudication, we are, under the guidance of the rule and governing principles determining this question, led to conclude that the judgment appealed from is a final order and therefore an appealable one.

We will next turn our attention to a consideration of the major question here presented, which is as to the nature and extent of the asserted lien of the appellant for the compensation award made him for injuries and that of the appellee lessor, the American Rolling Mill Co., for unpaid rents and royalties or the priority of the asserted liens as between these two claimants.

There appears to be no real dispute between the labor claimants and the compensation claimants, or between themselves, as to their each having the asserted prior liens granted them by the applicable statutes.

The pertinent facts, relating to appellant's asserted compensation award lien, are that he sustained on February 26, 1937, a personal injury by accident in the course and arising out of his employment by the Carol Mining Co., when operating under the Workmen's Compensation Act, the provisions of which he had accepted by registering when entering its employ as a miner.

Following his receiving the injury, he made application for adjustment of his claim to the Compensation Board and on December 16, 1938, it made him an award for total and permanent disability, which was twelve days before the attachment was sued out by the appellee against the property and effects of its insolvent lessee.

This single member award made appellant was on February 7, 1939, affirmed by the full board and has become final.

Appellant asserted his lien by way of answer and counter-claim against the Carol Mining Co., as provided by Section 2491, Kentucky Statutes, within sixty days from the date when the property shall go into the hands of a receiver or trustee or from the date when the business shall be stopped or suspended, and has thus perfected his compensation lien for recovery of the whole of his award out of the assets of the insolvent mining company, which have come to be distributed among its creditors.

It appears conceded and agreed by counsel for appellee that appellant has a superior lien for that part of his compensation award accruing within a six months' period next before the insolvency of the mining company, but he takes the position, as to the monthly or weekly installments thereof accruing or maturing after insolvency, that they are not secured by priority of lien under the statutes.

Opposed to this is the contention of appellant, that under the provisions of Section 31 of the Workmen's Compensation Act, Section 4912, Kentucky Statutes, when an industrial accident occurs, rendering an employer liable for compensation, the property and assets used in its business are from that time forward impressed with a lien to secure the compensation.

The question here presented for our decision, by reason of these opposing views, calls for a construction of Section 4912, Kentucky Statutes, or Section 31 of the Compensation Act, prescribing what the compensation claimant's right to priority and extent of lien shall be. Section 4912 provides that:

"All rights of compensation granted by this act shall have the same preference *or priority for the whole thereof against the assets of the employer as*

*is* allowed by law for any unpaid wages for labor.'' (Italics ours.)

It is to be noted that by this section of the act, it is provided that ''all rights of compensation (i. e., the award granted the injured employee) \* \* \* shall have the same preference or priority for the whole thereof (the award) against the assets of the employer as is allowed by law for any unpaid wages for labor.'' (Parentheses ours.)

There is nothing in the above section that indicates this priority of lien given is limited to but a part of the whole of the compensation installments granted the injured employee, or that the preference of lien against the assets of his insolvent employer is to be restricted to only such part of the compensation installments as are ''coming due to employees within six months,'' though it (Section 4912) does provide that the preference given such claimant against the assets of the employer shall be the same ''as is allowed by law for any unpaid wages for labor,'' which we see is, by Section 2488, made a preferred or prior lien, superior to any mortgage or other incumbrance theretofore or thereafter created.

Such being the wording of the provision, that the compensation claimant's priority of lien shall be of the kind allowed by law for any unpaid wages for labor, we must look to the Statutes, Sections 2487 and 2488, prescribing the character of the lien, or the matter of the priority of the lien given labor for unpaid wages.

The provisions of the first of these sections (2487), with respect to the right of laborers to liens, are as follows:

> ''When the property or effects of any mine \* \* \* shall come into the hands of any executor \* \* \* for the benefit of creditors, or shall in any wise come to be distributed among creditors, \* \* \* the employees \* \* \* shall have a lien upon so much of such property and effects as may have been involved in such business \* \* \* ''

The statutory lien created by such wording, on the property and effects of the insolvent employer, it is clear is merely a general lien, unqualified in any way except as it is modified by the following companion Section 2488, providing that:

"The said lien shall be superior to the lien of any mortgage or other incumbrance *thereafter created,* and shall be for *the whole amount due such employees,* as such." (Italics ours.)

These sections, 2487 and 2488, thus far, or down to the point quoted, provide that labor liens shall be superior to mortgages or incumbrances *thereafter* created and that the priority of lien given the laborer for wages shall be for the whole amount due him, as against later incumbrances, without reference to when the wages must have been earned in order for them to be secured by the lien.

However, the remaining portion of Section 2488 extends the right of priority of lien to only such part of the wages owing employee by providing that:

"For wages coming due to employees within six months before the property or effects shall in anywise come to be distributed among creditors, as provided in Section 2487, the lien of such employees shall be superior to the lien of any mortgage or other incumbrance theretofore or thereafter created."

This provision, it is clear, gives priority of lien to the employee over mortgage liens or other incumbrances, whether theretofore or thereafter created, for only such part of his wages as is shown "coming due * * * within six months before the property * * * comes to be distributed" among the insolvent employer's creditors.

However, no such time or other limitation is set forth in Section 4912, Kentucky Statutes, restricting the priority of lien, therein given an injured employee to secure his compensation award, to only that part of the award coming due within six months, as applies in the labor statute, Section 2488, before the property of his employer comes to be distributed. On the contrary, Section 4912 of the Compensation Act provides that the preference or priority given injured employees shall extend to the whole award or to all its installments, both due and to become due, made them by the board.

The case of Pyrites Company v. Davidson Chemical Company, D. C., 4 F. Supp. 294, Matter of Guarneri's Estate, 149 Misc. 759, 268 N. Y. S. 244, so construing similar compensation and labor statutes, is cited and

thus discussed in the Supplement to Schneider's Workmen's Compensation Law, Vol. 4, page 640, Section 570:

"A chemical company, a Maryland corporation, was in general equity receivership in the federal court. Prior to the receivership, two of its employees were injured in the course of their employment; and both were awarded compensation under the Longshoremen's and Harbor's Workers' Compensation Act. Both employees petitioned for preferential payment by the receivers of the accrued unpaid balance of the compensation awards. The claims for preference in this case was based on 33 U. S. C. A. para. 917, which reads as follows:

" 'Compensation shall have the same preference of lien against the assets of the carrier or employer without limit of amount as is now or may hereafter be allowed by law to the claimant for unpaid wages or otherwise.' Under the Maryland statute, the preference for wage claims was limited to those due and owing and contracted 'not more than three months anterior to the * * * appointment of receiver.' (Code Pub. Gen. Laws, Md., 1924, Article 47, para. 15). The district judge, in construing together the statutes quoted, said: 'Therefore, when the Longshoremen's Act gives that preferential status to "Compensation" which is given by the state law to "wages" without limit of amount, it is unreasonable to conclude that Congress meant, by reference to the state law, to limit the preference to only those longshoremen and harbor workers whose injuries occurred within a relatively short time prior to insolvency, or to limit the installments payable weekly over a long period, where the injury was a severe one, to those accruing during a few months prior to the receivership or insolvency. * * * In my opinion it logically follows that the claimants in this case, Wilson and Gaylor, are now entitled to be paid in full the weekly installments of compensation respectively awarded them which have accrued up to the present time.' "

It is the contention of lessor, American Rolling Mill Co., that its contract lien against the property and assets of its insolvent lessee, the Carol Mining Co., reserved and enforceable against it in the event of its

non-payment of rentals, is, as such, superior to the statutory lien of appellant against same, given to secure the payment of his compensation award.

While recognizing that, as a general rule, a statutory lien does not take precedence over a prior contractual lien, it is yet within the power of the Legislature to give a statutory lien priority over other liens, and, having such power, where the statute clearly shows and declares an intention to cause the statutory lien to override or take precedence over a prior contractual lien, it must be construed as effecting such priority of lien over it. Indiana Truck Corporation v. Hurry Up Broadway Company, 222 Ky. 521, 1 S. W. (2d) 990; Freeman v. Craft, 220 Ky. 15, 294 S. W. 822.

So, too, were the statutory liens given labor and compensation claimants by Sections 2488 and 4912 construed in the case of Middlesboro Coal Lands Owning & Leasing Company v. Climax Coal Company, D. C., 53 F. (2d) 132, 133, or that is to say, as granting superior liens to such claimants where there was manifested by the language of the statutes the clear intention of the Legislature to make the statutory liens given override a prior contractual lien.

In that case, a lien reserved under the lease for rent was held to be an "other incumbrance" and as such inferior to lien of laborers for workmen's compensation claims. The court there said:

"There is no conflict between this provision in Section 2488 and the superior lien given by them. But plaintiffs' lien is not a mere statutory lien. It is a contract lien. It is provided for in the lease, and was so claimed in the petition.

"I am constrained to hold that the workmen's compensation claims are entitled to priority."

The purpose of the statute is clearly to protect the disabled employee's loss of power, by reason of his disability or injury suffered, to earn a livelihood.

In the case of Turner v. Randolph, 213 Ky. 55, 280 S. W. 462, 463, this court had before it for construction these labor statutes, Sections 2487 and 2488. In there discussing the imperative considerations calling for the liberal construction and the upholding of the protective liens thereby given the laborer for his wages (or compensation awards), the court said:

"As said by the Supreme Court of the United States in Guarantee Title & Trust Company v. Title Guaranty & Surety Company, 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706, in considering an act of Congress giving preference for wages to laborers:

" 'The policy which dictated it was beneficent and well might induce a postponement of the claims, even of the sovereign, in favor of these who necessarily depended upon their daily labor.'

"And the Federal District Court of Georgia, in the case of In re Erie Lumber Company, 150 F. [817] 823, in upholding a similar statute of the state of Georgia, said:

" 'The protection of the wages of labor is a primary duty of society and of government. The wage earner constitutes an immense proportion of those who labor for the common welfare. So long as he remains healthful and self-sustaining, every prosperous result follows. In those unhappy epochs when the individual laborer is helpless, he and those dependent upon him become a charge upon the public. When labor en masse becomes helpless, when it is no longer possible to earn the means of subsistence, government itself is threatened, and revolution has often followed. It is therefore profoundly and philosophically true that it is the duty of government in every contingency to secure his earnings to the wage earner. This truth is at the basis of those laws which attempt to accomplish the result upon which the existence of orderly society may itself depend. National and state legislation sedulously attempt to accomplish this, and otherwise to ameliorate the condition of the laboring man. The courts with equal solicitude strive to attain the same end.' "

The same considerations apply with equal force to the sane and rightful policy of giving liberal construction to the compensation statute, Section 4912; that by this statute priority of lien is given to the compensation claimant to secure the whole of his award.

We are therefore led to conclude that the appellant was by Section 4912, Kentucky Statutes, given, as its language states, priority of lien, as against that of appellee, for the whole of his award against the assets of

his mine employer, appellee's lessee, and that such right of priority so given him was not limited, as was here adjudged, to only such part of his award as accrued within the six months' period next before the assets of his employer came to be distributed among its creditors.

Therefore, it is our conclusion that the learned trial court's ruling in this respect is erroneous, as being not in accord with our construction of this Section 4912 of the Compensation Act (which is, that it gave priority of lien, as it states, for the whole of the compensation award), and the judgment is therefore to that extent and in such respect reversed.

There appears to be no conflict or dispute between appellant and the other compensation and labor claimants as to the equal priority of their liens adjudged against the mining assets of their insolvent employer, the Carol Mining Co.

These assets and effects of their employer having now been ordered sold, for distribution of sale proceeds among the parties according to the priority and extent of their liens adjudged against same (the amount of which it further appears may be insufficient to pay all lien claimants in full), it becomes expedient that there should be a capital payment made of the compensation awards upon computation of their present cash value, and the net sale proceeds then apportioned between the compensation and labor claimants and the appellee, lessor, according to the adjudged priority of their liens.

Such being our conclusion, that the judgment appealed from is erroneous only in the respect that it limits the priority of lien of the compensation claimants against the assets of the employer to that part of same which come to be due within six months next before the assets and effects of their employer come to be distributed among its creditors, rather than granting such preference of lien to secure the whole of the compensation awards, it follows that such part only of the judgment is reversed, with the direction that same be so modified in this particular as to conform with our views as to this as above expressed.

Therefore, the judgment is accordingly to such extent reversed, but otherwise affirmed.