## Philips, et al. v. Hopkins, et al.

(Decided May 8, 1925.)

### Appeal from Pike Circuit Court.

1. Quieting Title—Petition to Quiet Title Against Mineral Claim, which might have Originated through Predecessor of Plaintiffs' Grantor, Properly Dismissed, in View of Pleadings and Proof.— In suit to quiet title against claim of minerals, where from pleadings it was possible that title of defendant might have been acquired from a predecessor in title of plaintiffs' grantor, and there was no proof that mineral title was acquired through latter, or that defendant had any knowledge of unrecorded deed from latter to plaintiffs, petition was properly dismissed.

2. Vendor and Purchaser—Finding of no Notice of Prior Deed Sustained by Evidence.—In action to quiet title, based on unrecorded deed, finding that defendant had no notice of prior deed held sustained by evidence.

3. Champerty and Maintenance—Deed from Father in Apparent Control Not Champertous, Because Sons Living with Him had Unrecorded Deed.—Deed from record owner, who lived on farm with

sons, and was apparently in possession and control, held not champertous, under Ky. Stats., section 210, because sons had unrecorded deed from father, as their occupancy was not sufficient to put any one on inquiry as to their right in land, in absence of actual notice.

F. W. STOWERS for appellants.

BROWNING & REED, ROSCOE VANOVER and KIRK, KIRK & WELLS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On September 25, 1896, Alfred Justice acquired title to a tract of land containing about 200 acres, upon which he with his family thereafter resided. His deed thereto was promptly recorded, and on August 23, 1900, he sold and conveyed a portion of the land to M. S. Hopkins for a valuable consideration. Hopkins recorded his deed, took possession of the land, built a house, barn, and outbuildings thereon, and has since resided upon same. Justice's wife, Arminta, died after he acquired title to the larger tract, but before he conveyed the portion thereof to Hopkins.

On May 3, 1915, the appellants, who are children of Alfred and Arminta Justice, instituted this action against Hopkins and the Chesapeake Mineral Company, alleging that they were the owners of the land under an unrecorded deed from their father, executed to them prior to his conveyance to Hopkins, and seeking the cancellation of the deed to him and to quiet their title to the minerals in said land against any claim thereto by the defendant, Chesapeake Mineral Company.

It was alleged in the petition that the defendants had acquired their claimed rights in and to the land with full knowledge of the unrecorded deed to them from their father, Alfred Justice. The averments of the petition were traversed by the defendants, and upon a trial of the issues thus formed, the petition was dismissed, and plaintiffs have appealed.

As from the pleadings it is possible that the immediate vendor of the Chesapeake Mineral Company acquired title to the minerals in the land from Alfred Justice's predecessor in title, and as there is no proof that its title was acquired from or through him, or that it had

any knowledge of the unrecorded deed from him to appellants, there can be no question but that the judgment, in so far as it dismissed the petition against that defendant, is correct and must be affirmed.

While it is claimed for the defendant Hopkins that the execution and delivery of the unrecorded deed from Alfred Justice to appellants is not clearly and convincingly established by the proof, as is necessary to entitle appellants to a cancellation of his deed, we may waive those questions, since, assuming the deed was executed and delivered, they yet were not entitled to the relief sought unless they proved knowledge by Hopkins of those facts, since when he bought the land from Alfred Justice, the latter not only had title of record thereto but was in possession and claiming same as his own.

Upon the question of such knowledge, the chancellor found against appellants, and the testimony, in our judgment, fully sustains that finding. The testimony of Annie Philips and I. B. Sanders indicated such knowledge upon the part of Hopkins at the time he purchased the land from Alfred Justice, but their testimony upon this question is contradicted by the testimony of Hopkins, his daughter, and William Rowe, as well as by the circumstance that no effort was made to disturb Hopkins in the possession of the land, or to contest his title thereto during the lifetime of Justice, or for nearly 15 years after Hopkins recorded his deed to the land and took possession of same.

It also is contended for the appellants that the deed to Hopkins is champertous and void because at the time same was executed, appellants were in the adverse possession of the land.

It is true that they were at the time living upon the land with their father, but, in addition to having title of record, he was claiming, and apparently in full possession and control thereof, and the possession of appellants, if any they had, was as hidden and secret outside of the family circle as was the unrecorded deed, and was neither open nor notorious.

As held in Inter-State Investment Co. v. Bailey, 93 S. W. 578, 29 Ky. L. R. 468, the possession that will render a deed champertous under the statute (section 210) must be actual, and such as would imply that the tenant holds against all the world, and will acquire title if maintained long enough.

Justice continued to claim, manage, and control all of the land after it is claimed he deeded same to his children, just as he had theretofore, and except as to such parts thereof as he conveyed to others, until his death in 1907 or 1908, and there is no evidence whatever that appellants ever had actual possession of any part thereof. Hence their possession, if any, was neither actual nor such as would imply they were holding or claiming same against all the world or at all. Neither was the fact that they were living with their father as members of his family sufficient to put anyone upon inquiry to ascertain by what right they were on the land, as presumably, in the absence of notice to the contrary, they were there as his children and by reason of, rather than adverse to, his title and possession. If it were otherwise, it never would be safe to buy land from a man having title of record and living upon same with his family without an investigation to ascertain whether or not some member of the family had an unrecorded deed to, or equity in the land. Hence this contention is also without merit.

Judgment affirmed.