## Douthitt et ux. v. Guardian Life Insurance Company of America.

Decided September 26, 1930.)

BARNES & SMITH for appellants.

E. B. ANDERSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellants, F. R. Douthitt and wife, who were plaintiffs below, owned a business house in the city of Owensboro upon which they had executed a mortgage to the appellee and defendant below, Guardian Life Insurance Company of America, to secure a note executed by them to it upon which there was due on November 17, 1927, the sum of $9,650. On that day appellee instituted

an action in the Owensboro circuit court to recover judg-ment on its debt and for an order of sale of the mort-gaged property to satisfy it, and in which it was success-ful. The master commissioner advertised the property for sale at 11 a. m. on May 21, 1928. Some time before that day arrived, but after the advertisement was posted, appellants and plaintiffs in this action made arrange-ments with the Federal Fidelity Company of Louisville, Ky., whereby it agreed to pay the judgment to the defendant herein and to defer the sale thereunder until a future time agreed upon, and all of which was consented to by the owner of the judgment, and which arrangement was to be consummated on or before the time for the advertised sale.

Two days before the sale or on the morning it was to take place, as alleged in the petition, the Federal Fidelity Company receded from its agreement and declined to satisfy the judgment according to the pre-vious arrangement with it, and the master commissioner proceeded to sell the property at which the present defendant and appellee, Guardian life Insurance Com-pany, became the purchaser at the price of $8,001, which was $1 more than two-thirds of its appraised value. The sale was duly reported on May 28, 1928, and was con-firmed three days thereafter (May 31), the day upon which the term of court was adjourned. Before the report of sale was made, and of course before it was con-firmed, plaintiffs learned the facts with reference to the refusal of the Federal Fidelity Company to carry out its agreement, and of the sale of the commissioner following it, and employed an attorney of the Owensboro bar to file exceptions to the sale, stating to him the general facts as hereinbefore outlined as part grounds therefor. He, however, and for no reason apparent of record except neglect, failed to prepare or file exceptions, and the sale was confirmed as hereinbefore stated.

After the adjournment of the term of court, this action was filed by plaintiffs against defendant under the provisions of section 518 of the Civil Code of Practice and succeeding ones to have the order and judgment confirming the sale set aside, and that they be permitted to file exceptions to the reports of sale upon the ground that the facts above stated constituted unavoidable cas-ualty or constructive fraud entitling them to the relief sought. A demurrer filed by the defendant to the peti-

tion was sustained, followed by an amended petition which alleged no new facts, but elaborated on the ones averred in the petition, and a demurrer was likewise sustained to it, when plaintiffs declined to plead further and their petition was dismissed, to reverse which they prosecute this appeal.

It was averred in the petition, and substantiated by the filing of some affidavits (though incompetent on the hearing of the demurrer), that the property at the time of the sale was worth $25,000, and that the bid of defendant, though being two-thirds of its appraised value, was grossly inadequate; but no other fact was averred to take the case without the rule that mere inadequacy of price at a decretal sale is not sufficient to authorize the court to set it aside. Nowhere in any of plaintiffs' pleadings was it averred that any fraud or collusion was practiced by the appellee, Guardian Life Insurance Company of America, in whose favor the judgment was rendered, either upon plaintiffs or the attorney that had been employed to file exceptions to the sale, or upon the master commissioner or any one else connected with the enforcement proceedings. Neither was any such conduct charged against the attorney who neglected to perform the duties for which he was employed. But it is strenuously argued that because of the gross inadequacy of price the law will infer, in some manner unknown to us, constructive fraud on the part of appellee growing out of its failure to notify plaintiffs of the fact that the Federal Fidelity Company had receded from its agreement to satisfy the judgment and accept a transfer of it from appellee. We have been cited to no authority sustaining any such proposition and we have been unable to find any giving color thereto. No one was more vitally interested in having that agreement consummated than plaintiffs. In fact, it was for their exclusive benefit that it was negotiated and entered into. It was essentially their duty in the exercise of reasonable diligence for their own protection to see to it that the agreement was carried out and which exacted from them vigilant watchfulness and attention until such a result was accomplished. Instead of doing so, they dropped the matter entirely and supinely rested on the stool of ''do nothing'' and thereby suffered the sale to be made.

They, however, yet had the opportunity to avail themselves of any relief, if any, to which they were

entitled because thereof by filing exceptions to the sale and manifesting the facts to the court for its adjudication; but instead of doing so they chose to still occupy the same stool, except to employ an attorney to file the exceptions; but they thereafter kept their seat and again suffered the sale to be confirmed and the term of court to adjourn.

It is conceded by counsel for appellants that a client is bound by the actions and neglect of his attorney within the scope of the latter's duties; but they argue that the bare fact of the failure of the attorney to carry out his employment constituted constructive fraud entitling their clients to relief against such neglect or omission of counsel. But we do not so understand the law, which, in effect, says, that there should be an end to litigation and that an attorney is an agent of his client for the acts and omissions of which the latter is bound, except as against one who colludes with an attorney or whose agent colludes with him, in which case relief will be granted against the beneficiaries of such fraudulent collusion. We repeat, however, that there is no allegation of any such colusion, nor any allegations of any fact having a remote tendency to disarm or mislead plaintiffs, either with reference to the withdrawal of the agreement by the Federal Fidelity Company, or with reference to the failure and neglect of employed counsel to file exceptions to the report of sale, and the only grounds presented to us by the petition as amended are the two bare facts: (1) That the Federal Fidelity Company did withdraw its proposition to purchase the judgment and extend further time to plaintiffs; and (2) that the employed attorney, for some cause not stated, failed to except to the report of sale.

We deem it entirely unnecessary to refer to either texts or adjudicated cases to show that fact 1 is insufficient in law to sustain this action; for if it be conceded (but which is not alleged) that the Federal Fidelity Company *wrongfully* refused to carry out its agreement, then the defendant and appellee here, under no conceivable proposition of law known to us, could be held responsible therefor, since the defaulting company sustained no contract privity with it. On the contrary, its contract was with plaintiffs and which was acceptable to the defendant, who in the end was interested only in obtaining sat-

isfaction of its judgment upon terms agreeable to it. It was the duty of plaintiffs to so satisfy that judgment and they endeavored to do so by entering into a contract with the Federal Fidelity Company to make a temporary satisfaction thereof in their stead. And, we repeat, it was essentially the duty of plaintiffs to see that their arrangements with it were carried out and it was no part of the duty of defendant to notify plaintiffs to the contrary. -

That fact 2 is likewise insufficient to sustain the prayer of the petition and to entitle plaintiffs to the relief sought is abundantly established by all text writers and all adjudications dealing with the subject. The text in 34 C. J. 307, par. 527, lays down the rule that: "The negligence of an attorney is imputable to his client and that the latter can not be relieved from a judgment taken against him in consequence of the negligence, carelessness, forgetfulness or inattention of the former, unless such neglect was excusable under the circumstances." In the case of McGuire v. Mishawaka Woolen Mills, 218 Ky., 530, 291 S. W. 747, 749, which was one brought under the same sections of the Code as was a default judgment (and which counsel for appellants argue is an analogous situation to the one here involved), we not only held that a litigant "is responsible and is to be charged with the neglect of his counsel, and that the law demands the exercise of due diligence by both in the prosecution or defense of litigation," but also that the negligence of the counsel unaccompanied by any disarming or misleading facts did not constitute "unavoidable casualty or misfortune within the meaning of section 518 of the Civil Code." Nor could fraud of any nature, actual or constructive, be bottomed upon any such unqualified neglect. In the case of Lucas v. Stanley, 185 Ky. 221, 215 S. W. 58, we held that the negligence of an attorney to file an answer for his client was imputable to the latter, and for which the client was responsible as if the neglect had been his own.

In the case of Bowles' Guardian v. Johnson, 218 Ky. 221, 291 S. W. 29, we dealt with a question similar to the one we have here and likened the situation to a default judgment, and held that in order to sustain a proceeding under section 518 of the Civil Code of Practice to set aside the confirmation of a sale to which exceptions had not been filed, it should be made to appear that the grounds therefor were facts dehors the record and that the applicant had no knowledge thereof before the con-

summation of the sale. All of our cases and the adjudications of other courts are to the same effect, unless there appears some inequitable fact calculated to disarm the applicant for the relief and which emanated from his antagonist or the latter's counsel, and through and by which an undue advantage was obtained, which latter fact might bring the case within the sphere of equitable cognizance and enable the court to grant relief and to administer equity and justice in the premises.

But, as before stated, we have no such facts appearing in this case, and the unfortunate situation into which plaintiffs have landed can be attributed, so far as this record shows, to nothing but their gross and inexcusable neglect, for, as it is also stated in 34 C. J. 307, par. 525: "It is the duty of a party to inform his counsel fully of the facts constituting the cause of action or defense, and to be personally active in procuring witnesses, collecting evidence, and otherwise preparing for trial, the mere employment of counsel not being sufficient to excuse the party from giving the case his personal attention. A party must keep himself informed of the progress of the case, not relying upon such news as he can obtain from persons not bound to keep him advised," etc. That rule is in accord with the numerous opinions of this court on the subject, and its obedience required plaintiffs, after employing counsel to file exceptions to the sale, to abandon their passivity and to become active not only in the preparation of their exceptions, but in seeing to it that they were filed and to prepare for a trial thereof, since "the mere employment of counsel not being sufficient" to excuse them from giving the case their personal attention. To uphold the contentions of counsel for appellants would not only be the granting of a license to litigants to wholly and entirely neglect their cases in court, but would also result in never ending litigation contrary to one of the well established rules of law.

It may be conceded that plaintiffs have sustained loss and that their situation excites sympathy, but it is the result of their own carelessness and inattention, for which the law can furnish no relief.

Wherefore, the judgment is affirmed.