# World Fire & Marine Ins. Co. et al. v. Tapp et al.

Feb. 18, 1941.

Frank M. Drake and Ben D. Ringo for appellants.

Pentecost & Dorsey, F. Z. Monarch and Louis I. Igleheart for appellees.

Opinion of the Court by Stanley, Commissioner—Affirming.

The appellants, World Fire & Marine Insurance Company and Home Insurance Company, issued policies of fire insurance in the aggregate sum of $2,300 on the stock of merchandise and $300 on the fixtures and equipment in the general store of T. B. Tapp, in the village of Stanley. The policies were issued in January, 1936, and the store, with its contents, burned in September, 1936. Suits on the policies were consolidated. Liability was denied on the grounds of over-insurance, fraud and misrepresentation in the proofs of loss and a failure to comply with the "iron safe clause" of the policies. A supplemental defense was that the insured had at-

tempted to commit a fraud by making false statements in his deposition taken after the suits had been filed. Judgments were recovered, but we reversed them because of error in striking the supplemental defense. World Fire & Marine Insurance Company v. Tapp, 279 Ky. 423, 130 S. W. (2d) 848. Another verdict was returned in favor of the insured, and the defendants appeal.

The amended answers pleaded that in his deposition, taken as on cross-examination, the plaintiff had falsely stated that he had made cash purchases of merchandise from certain wholesale groceries in Evansville, Indiana, and placed them in the insured stock; that there had also been placed in the stock immediately before the fire a shipment of goods from a Louisville company; and that he had procured the money with which to make these purchases from his accounts in two certain banks. Appropriate allegations were made as to the violation of the terms of the several policies in respect to material misrepresentations. It was further alleged that the defendant ascertained that the plaintiff had thus testified falsely and that "rather than to require proof thereof the plaintiff had heretofore stipulated in this record that said statements are untrue." Upon a return of the case the reply to this pleading of the defendant previously tendered was ordered filed. This was in the nature of a confession and avoidance. The plaintiff pleaded the truth of his statements made in the deposition and alleged that the stipulation was erroneous and had been made by one of his attorneys without his knowledge or consent and under an erroneous impression of the facts. Issue was made by a rejoinder, and the court admitted evidence relating to the whole matter and submitted the question of misrepresentation in this regard along with other issues of the case.

The evidence was that Tapp had testified he had bought five or six hundred dollars worth of merchandise for cash at some unidentified wholesale house near the branch office or store of the International Harvester Company in Evansville; that he had not bought any dry goods but "my wife, I think she said she bought $100.00 worth" a day or two before the fire, "in Louisville, I believe; I don't know for sure"; and that he had obtained the cash from his bank accounts at Morton's Gap and at Sacramento, Kentucky. The stipulation was

signed by one of plaintiff's attorneys and the defendants' lawyers a short time before the first trial. It recites that in order to save the trouble and expense of taking depositions "the following facts are admitted and may be used as evidence in this action as if proven by a witness personally testifying at the trial." The facts were that there were three named wholesale groceries within a radius of ten blocks of the International Harvester Company's office in Evansville, and that Tapp had not bought any merchandise from any of them; that at the time his bank accounts were practically depleted and he had not drawn any checks on them and thereby secured the cash for those purchases; that plaintiff was unable to furnish or obtain from his wife or any other source any information about the name of any Louisville wholesale dry goods concern other than the one named which he had testified his wife had bought goods from just before the fire.

The plaintiff moved to be permitted to withdraw the stipulation for the reason above stated. The defendants insisted that the court hear evidence in chambers concerning its making and the claimed right of the plaintiff to withdraw the stipulation. The court overruled both motions and ordered filed the reply to the amended answer pleading the testimony in the deposition and the stipulation as constituting an attempted fraud on the companies, which reply had been tendered before the first trial but not filed because the court had striken the pleading. Then the defendants moved to strike that amended reply and the court overruled their motion. They submit that this was error, and, as above stated, error to admit evidence before the jury concerning the making of the agreement. Appellants contend that if plaintiff had the right to repudiate the stipulation, it was a question to be determined by the court, and when the court denied him that right it exhausted its power, and therefore the stipulation remained as an uncontrovertible admission of a conclusive fact. We do not think that theory tenable. Generally, stipulations are of two classes: One relating to evidence, i. e., consisting of an agreed statement of fact, and the other relating to procedure. This one partakes of both classes. The right to repudiate a stipulation is recognized where it is shown that it was inadvertently made, provided notice is given to the opposite party in sufficient time to pre-

vent prejudice to him. Karnes v. Black, 185 Ky. 410, 215 S. W. 191; 25 R. C. L. 1099. Plaintiff's evidence is very persuasive that this agreement was made through a misunderstanding on the part of his attorney. It is to be remembered that the implied authority of an attorney to make the stipulation in a case is ordinarily limited to a procedural matter. 25 R. C. L. 1098; 60 C. J. 90. In his discretion the court might well have permitted the withdrawal of the stipulation, except as it constituted an admission against interest, for the defendants had had ample notice of the plaintiff's intention to repudiate the stipulation. The court's failure to allow its withdrawal permitted the defendants to introduce the same before the jury according to its terms. It had not been stipulated that the facts stated should be conclusive. It had been agreed only that the statement should be admitted as if testified to by some person. Therefore it was not error to permit the plaintiff to explain the admission and account for its having been made. Nor was it error to allow him to respond to defendants' pleading of this ground of attempted fraud as relieving them of liability under their contracts. The defendants had the full benefit of the admissions, subject to the explanations made by the plaintiff. Those were that he was not familiar with Evansville and the location of the various wholesale houses and that he had since located and identified the house from which he had bought the goods. He undertook to establish the truth of his deposition that he had bought goods from it for cash. He pretty conclusively showed that instead of having drawn on his own bank accounts he had cashed several checks on the named banks which had been given him in payment of his work or services in the operation of his saw mill. The difference between his deposition relating to the Louisville purchases (which in this particular was indefinite) and his agreement as to the facts went to the jury for what it was worth.

The defendants sought to benefit by the stipulation being left in the record as a part of their pleading by a motion for a judgment non obstante veredicto, the code providing that a party is entitled to such judgment when the pleadings entitle him to it. Section 386, Civil Code of Practice. A judgment on this account must be based upon what the pleadings show and not upon deductions from the evidence. Stevenson v. Moore, Ky, 118 S. W.

951. This stipulation was in the pleading only as of a fact which in itself, without explanation, constituted or tended to constitute an attempted fraud, and on that pleading issue had been joined. We do not, therefore, think the point well taken that defendants were entitled to the judgment on the pleadings.

Appellants withdrew a motion for a peremptory instruction. They argue, however, that the verdict is flagrantly against the evidence relating to the issues of over-insurance and attempted fraud. Tapp had not had any previous experience in the mercantile business, having for a lifetime been engaged in logging, saw milling and wheat threshing. In the early fall of 1936 he purchased this store property and an adjacent residence, into which he moved his family. His wife practically ran the business while he continued in his work. The burden of proving fraud was, of course, on the companies. Their evidence tended to show the stock of merchandise to have been small, considerably shop worn and of little value when acquired and when burned. Plaintiff's evidence was that he had bought the stock at a bargain, and before the insurance was solicited by the companies' agent it had been enlarged and increased in value by a substantial amount. He had put back all earnings and more. The testimony of himself and several witnesses tended to show that when the fire occurred nine months later the stock was worth considerably more than the insurance. There was little or no documentary evidence because Tapp, as he testified, had paid cash for goods purchased and his records were destroyed in the fire. The estimates of value submitted by both parties were by persons more or less qualified. Some witnesses perhaps estimated the values too high as a whole, but making due deductions and allowances on that account there yet remained evidence of value enough to bring the stock within the amount of the insurance. It is argued that this testimony is too vague and indefinite to support the verdict, but it is about the best that could have been produced under the circumstances. It is not to be overlooked that the defendants' proof in this particular was of like character. Moreover, when a company insures personal property of this kind, either after inspection and valuation by its own agent or without inspection and upon the chance that the stock may be of the value represented, it ought not

to expect too much of the insured in the way of retroactive proof. It ought not to complain under such circumstances because the insured cannot produce documentary evidence conclusively establishing the value of the stock.

The proofs of loss were made up from memory. While they contain some extravagances, all of the circumstances attending their making, including the character of assistance which the insured had, tend to show that whatever exaggerations there may be were errors and legitimate mistakes. At least, the evidence pro and con made the question one for the jury. Globe & Rutgers Fire Insurance Company v. Frankfort Distillery, 226 Ky. 706, 11 S. W. (2d) 968; Insurance Company of North America v. McCraw, 255 Ky. 839, 75 S. W. (2d) 518. The absence of suspicious circumstances, save only that the family was away from home at the time, tends to negative the contention that the insured was attempting to perpetrate a fraud upon the companies. A full consideration of the evidence does not by any means convince us that the verdict is flagrantly against the proof.

Originally the Home Insurance Company pleaded fraud on the part of the plaintiff in having falsely stated in a written application for its policy that he had never had a previous fire, whereas in fact he had had four fires; and the World Fire & Marine Insurance Company pleaded the same false statements as having been orally made. The insurance was solicited by one subagent for both companies. Before the second trial the allegations as to the written application were withdrawn and the plea of fraud on this account was based on oral representations. Appellants say in brief that this was to avoid repetition of a "badgering" cross-examination of the agent respecting the accuracy and mutilation of the document, which examination, it is said, may have confused the jury and detracted from the issue. On this trial the witness testified that in the conversation concerning the order for the insurance Tapp stated he had not had any fires. In a cross-examination the witness was presented with the writing and asked about how and when the application was written up and about omissions and inaccuracies. It appears that he had put down the answers in pencil and they had been traced in ink by his daughter and that some changes were made in

it after it was signed. The document bears erasures and changes in figures. Appellants insist that this cross-examination was irrelevant and improper. It seems to us to have been relevant as a test of the good faith and memory of the witness as to what was said and done when plaintiff made the statement attributed to him.

Perhaps some of the appellants' claims of erroneous rulings on other items of evidence are well taken, but they are not of much materiality and cannot be regarded as prejudicial. It would be unusual if in a trial of this character and extent there should be a perfect record.

The instructions submitted the measure of recovery as the "reasonable cash value at cost with freight added, less depreciation." It is contended that there was no evidence showing such value. The witnesses testified in general terms as to the "value" or "reasonable value" or "reasonable market value," and none of them specifically stated its value at cost with freight added and less depreciation. Technically, the complaint is well made, but viewing the evidence as a whole and making due allowance for the high values which some of the witnesses placed on the stock at the time of the fire, carrying its value far beyond the amount of insurance, we think the difference is not so material as to be prejudicial to the substantial rights of the appellants.

The judgment is affirmed.