## Baringer v. Kaufman's Adm'r et al.

Dec. 5, 1941.

As Modified on Rehearing Jan. 23, 1942.

Frank A. Ropke for appellant.

Gilbert Burnett and Davis W. Edwards for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

Mrs. Kaufman died intestate July 25, 1935, leaving surviving several daughters and sons and one infant grandchild. One of the sons, Henry, qualified as administrator. Mrs. Kaufman was the owner of a tract of 30 acres and improvements, located in Jefferson County, and the controversy here arose over the sale of this tract to appellant.

Following a proposal to purchase by Baringer it developed, as far as he was concerned, that since the interest of an infant was involved, decretal sale would be necessary to convey title, a fact undoubtedly known to some if not all of the heirs, and the attorney, whose defalcation precipitated this controversy. This attorney prepared petition, making the owners, including the infant, parties plaintiff, asking for order of sale.

This petition was signed by the attorney for the Kaufman estate, the administrator, "et al.," though it appears that one of the daughters, individually, and as guardian of the infant, was represented by another at-

torney. The name of still another attorney for one of the heirs was signed to the petition, but he disclaimed signature. Baringer, who prior to suit had paid the defaulting attorney nearly one-half the formerly agreed purchase price, was not made a party. There was no contest, and the court directed sale.

The commissioner reported that on October 5, 1936, he had made the sale, on terms directed, to Baringer by "attorneys," at the price of $4,420, and noted that the "purchaser had not complied with terms of sale." Thereafter (no date given) the sale was confirmed; later (no date given) one of the heirs moved for a rule against Baringer to require him to comply with his bid.

His response, filed October 13, 1938, developed that prior to July 25, 1936, he had discussed the purchase with the administrator, who took him to the attorney's office and told him that Baringer had made the best bid for the land, and apparently some sort of agreement was reached, since on the date last above named Baringer delivered to the attorney a written proposal, in which he agreed to pay $4,350 for the "property of the Susan Kaufman estate," $2,000 deposited at the time and the balance to be paid in installments after the date of deed, possession to be given ten days after delivery of deed. In different typing the following appears: "This proposition is open for acceptance until Sept. 1, 1936. Witness this July 25, 1936, (signed) 'Susie Kaufman estate' " by the attorney.

The attorney then in behalf of the estate gave Baringer a receipt for the $2,000. Apparently offer and receipt were prepared at the same time and place. The writing exhibited does not show acceptance of the proposal by any one. Thus the matter remained until September 25, 1936, when attorney wrote Baringer informing him that in order to pass title to the property on "which we hold your offer of recent date," the property would be sold publicly on October 5, 1936, "at which time we will have your offer made, and deem that same will be accepted without question, * * * and we anticipate you will get title to the property without delay."

Following this letter Baringer went to the office, and when the attorney explained to him that judicial sale was requisite, he said: "Just go ahead and use the $2,000 on the down payment; I will make notes for the balance."

He also said that later (November 5, 1936) he paid the attorney $429.38 to be credited on the purchase price. This was as shown by exhibits, after the sale had been made. A receipt is signed by the attorney, "on Kaufman property." Soon after the sale Baringer was put in possession of the property, though not occupying the house. It was rented, and he and attorney conceiving that Baringer was the owner (though no deed had been made) agreed that the attorney should collect the rent and apply it on the purchase price. This was done up until October, 1937. The tenant would pay the rent to attorney, who would give a receipt to tenant, who would turn it over to Baringer; rentals amounted to about $237; none of the sums mentioned was ever turned over, or reported to the heirs, administrator or to the clerk or commissioner, Kentucky Statutes, Section 1012, and it is shown that the attorney had defaulted, and is insolvent.

The foregoing, taken from the response filed, is elaborated to some extent from proof. The claim of Baringer was, and is, that since he had paid the sums named to attorney for the administrator and heirs, he was entitled to have the total credited on his purchase price. The heirs, or some of them, demurred to the response; the matter came to a hearing on the demurrer, and proof was heard orally before the chancellor, who in a written opinion, after stating briefly the facts, concluded that after Baringer had been notified of the necessity of judicial sale, and left the $2,000 with the attorney, who was to protect his offer by bidding in the property, attorney was the agent of or attorney for Baringer, who should have demanded the return, or the attorney should have returned to him the $2,000; that in bidding on the property he was the agent of Baringer, and further found that the attorney who held the sums paid to him after the sale in a dual capacity, as agent for both.

Upon his findings the chancellor directed judgment entered, holding the response insufficient, refusing to credit any of the payments, and made the rule absolute; from this order appeal is directed. In taking the proof the chancellor correctly held the proof down to the question, "Who was the attorney representing in the transaction?" In the testimony Baringer admits the transactions (as stated) between himself and attorney; a great part of his testimony goes to the point that he had never employed the attorney to represent him, and that at all

times he believed he was representing the heirs and administrator, and that they thought they could sell the property without decree.

In addition to what is stated above, it developed that some time after notice of the defect in title, Baringer had some lien notes which were in default, which he turned over to the attorney for collection. These were apparently collected, since attorney receipted to Baringer for $429.38 as of November 15, 1936, a part of which was the proceeds of this collection. He also admits the arrangement with the attorney for rental collections and application of the proceeds. Still again, at some period after he had indirect possession, he authorized the attorney to have repairs made on the roof. This was done, the attorney paying the roofer and Baringer paying attorney.

There appears in the record an affidavit of date May 24, 1938, made in the office of an attorney who represented one of the heirs, and who apparently unwillingly prepared it, in which Baringer said that he had employed defaulting attorney to represent him, including the examination of title, and had agreed to pay him for his services.

As we observe the record we find that a majority of the heirs and attorneys for others testified. The substance of the whole testimony was to the effect that they had never employed attorney to sell the land, or to bring suit for sale, and the chancellor correctly gave proper weight to their testimony. However, the same situation did not exist as to Henry Kaufman, who was an heir as well as administrator of the estate. He frankly admits that in order to effectuate a sale he brought Baringer and the attorney together, and was present when the money was paid to attorney, and receipt was given. He had already, in the capacity of administrator, employed attorney to advise him, and later agreed to suit to sell. This fact was known to some of the heirs, though they did not know of pending transaction regarding sale, which was arranged and agreed to by Henry Kaufman.

In this respect, while having no legal right as administrator to sell the real estate, he did have the right to deal with his interest as heir, both in proposed sale and suit, and it appears that he had placed the entire matter, insofar as he was concerned, in the hands of the

defaulting attorney, and ought not to be heard to complain; equity and justice would warrant the contrary, and we note that insofar as the record shows, though he was administrator, he has never complained, since the motion for rule was filed by another one of the heirs.

Counsel correctly contends that the general rule in respect of relationship of counsel and client is that the client is bound by the acts of counsel when such are performed within the scope of authority. Douthitt v. Guardian Life Ins. Co., 235 Ky. 328, 31 S. W. 377. Under these circumstances it would neither be just nor equitable to require Baringer to pay twice for Henry Kaufman's distributable portion of the sale price of the land, so we are of the opinion that while there is no doubt as to the correctness of the chancellor's conclusions as to the remainder of the heirs, there is more than a doubt as to his placing Henry Kaufman in the same category.

To the end that the judgment may be corrected in this respect, the case must be reversed as to Henry Kaufman and affirmed as to other heirs, and it is remanded for entry of a judgment which will give Baringer a credit to an amount due Henry Kaufman in the distribution of proceeds. The costs in this court to be paid one-half by appellant, the remainder by Henry Kaufman, individually.

Affirmed in part; reversed in part.