## City of Hazard v. Duff et al.

Nov. 12, 1943.

W. E. Faulkner for appellant.

John E. Campbell and B. W. Baker for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This appeal is from so much of a recent judgment in an ancient suit as holds the City liable for the amounts by which street improvement assessments against certain lots exceeded 50% of their value at the time the assessments were made.

The lots in question are known in this record as the Igoe and Brashear, and the Kelly, Bailey, Hardesty, Benningfield, and Combs lots; the assessments were made on December 1, 1924; and this suit to enforce the liens and to impose liability upon the City was instituted on September 23, 1931, by two banking institutions which alleged that they were the owners of certain of the street improvement bonds issued by the City on December 11, 1924, pursuant to an ordinance adopted in 1922. On October 9, 1935, an intervening petition was filed by H. P. Duff, Trustee, alleging that he had become the owner of all of the bonds sued on, and an order was entered substituting the intervenor as plaintiff and permitting him to prosecute the action to a conclusion for the benefit of all persons owning street improvement bonds of the same series. The grounds urged for a reversal are: (1) That on October 28, 1932, a judgment was entered enforcing the liens for the full unpaid amount of the assessments against the Igoe and Brashear lots, pursuant to which the lots were sold by the

Commissioner at public sale on June 13, 1938, and purchased by the plaintiff; and that this judgment constituted an insurmountable bar to the entry of a subsequent judgment enforcing the lien for a portion of the assessments, and imposing liability on the City for the remainder. (2) That the Court also erred in ignoring a judgment entered on June 16, 1938, enforcing the lien for the full unpaid amount of the assessments against the Kelly, Bailey, Hardesty, Benningfield, and Combs lots, since that judgment, though no sale was had under it, had never been legally set aside, and hence, constituted a bar to any subsequent adjudication on the subject. (3) That the Court erred in construing as final an order entered on February 7, 1939, fixing the value of the lots as of the date of the assessment so low as to render a portion of each assessment void, and in refusing to consider depositions taken by the City subsequent to the entry of the order, showing the value of the lots to have been several times greater than the amount of the assessments. We shall discuss these grounds in the order named.

I. At the time the judgment under which the Igoe and Brashear lots were sold, was entered, the City, the record lienholders, and Igoe and Brashear and their respective wives were before the Court. Originally, all of the property involved in this particular litigation had been owned by a group of individuals who, retaining vendors' liens, had sold and conveyed it to another group who had subdivided it into building lots, and sold them at auction. Igoe and Brashear, as well as the other individual lot owners above named, had purchased their lots at this auction sale, and paid a portion of the purchase price in cash. Deeds were executed to them and placed with a bank to be delivered when payment of the purchase price had been completed. The proof would seem to indicate that these purchasers were treated as the actual owners by the group which had subdivided the property, since the latter attempted to recover on the purchase money notes. However, deeds to the auction purchasers had never been recorded, and at the time the judgment referred to was entered, the actual holders of the legal title, that is, the group who had acquired the title from the first group and sold the property at auction, had not yet been made parties to the suit. Because of this fact, appellees argue that the judgment rendered was void, but we cannot so regard it. The Court, in the

judgment appealed from, expressly adjudged that the auction sale purchasers were the equitable and beneficial owners of the property against which the assessments were made, and that their title and interest was such as permitted them to sign the ten year payment plan for the payment of the assessments; and this portion of the judgment is not attacked. The deed (which retained a vendor's lien) to the group which sold the property at auction was of record at the time the suit was instituted, and therefore the appellee, Duff, at the time he became the purchaser of the Igoe and Brashear lots at the sale held pursuant to the judgment of October 28, 1932, had constructive notice that the legal title was not in Igoe and Brashear. The sale was duly confirmed without any exception to the Commissioner's report of sale having been filed, and a deed ordered made to the purchaser. Moreover, the holders of the legal title were made parties to the action long before the judgment appealed from was rendered. In any event, the purchaser under the judgment of October 28, 1932, who, as before stated, was the appellee Trustee, acquired the interests of Igoe and Brashear, and the possibility that he may not have acquired more, does not render the judgment void. We are, therefore, of the opinion that so much of the judgment appealed from as imposes liability upon the City for a portion of the assessments against the Igoe and Brashear lots, is erroneous. First State Bank of Pineville v. Asher, 273 Ky. 574, 117 S. W. (2d) 581.

II. During the term of Court at which the judgment of June 16, 1938, was rendered, the Court entered an order setting it aside. Appellant contends that because the order setting aside the judgment was improperly captioned and indexed, and no grounds for setting aside the judgment or motion for such action appear in the record, the order was a nullity, and the judgment remained in full force and effect. But no steps were taken under the judgment, the intent of the order setting it aside is unmistakable, and it is a well settled rule that "The power of the Court to modify, set aside, or vacate its judgment at the term at which same was entered is broad and comprehensive and not dependent upon statutes regulating new trials." See First State Bank of Pineville, supra, and authorities therein cited. We conclude, therefore, that the Court, in rendering the judgment appealed from, properly disregarded the judgment of June 16, 1938.

III. On July 22, 1938, a motion was made by the plaintiffs that the Court fix the value of the lots hereinbefore referred to, and that it state whether the values should be determined by the Commissioner, by depositions, or by oral testimony; and on February 7, 1939, the order, which the final judgment treated as final and a bar to the re-valuation of the lots, was entered. The order stated that the Court, having directed that the proof be taken by depositions, and depositions for the plaintiff having been taken .(that is, one deposition given by C. C. Duff), "the Court being advised, orders and adjudges that the value of the following described lots as of December 1, 1924, be, and the same is as follows:" The order closes with a designation of the lots and their values.

As shown by a deposition given by the present City Attorney on December 13, 1940, six days before the submission of the case, the purchase price bid for the lots in question at the auction which was held in the latter part of May, 1924, was several times greater than the assessments. However, the Court sustained appellees' exceptions to this deposition and to the deposition of E. C. Wooton, the Commissioner of the Court, taken subsequent to the final submission of the case. While the Court may have made these rulings because he regarded the deposition of the City Attorney as incompetent, and that of Wooton as taken too late, he had doubtless reached the conclusion, so clearly announced in the final judgment, that the value of the lots at the time of the assessments had been irrevocably fixed by the order of February 7, 1939. But in this conclusion we believe the Court erred. The order of February 7, 1939, while it purported to settle one point involved in the litigation, did not purport to afford relief to any of the litigants, or to determine the extent of any litigant's liability. It was entered at a special term of Court almost two years prior to the submission of the case, and so far as the record shows, without notice to the City, and did not meet the requirements of a final and appealable order which frequently has been defined by this Court as one which "either terminates the action itself, decides some matter litigated by the parties, or operates to divest some right, in such a manner as to put it out of the power of the court making the order, after the expiration of the term, to place the parties in their original condition." Kentucky Heating Co. et al. v. City

of Louisville, 178 Ky. 424, 198 S. W. 1150, 1152. In the case cited the Court also quoted with approval the following excerpts from the opinion in the case of Bondurant v. Apperson, 4 Metc. 30:

"It is certain, however, that a judgment cannot be final merely because it decides some question of law or fact relating even to final relief, nor merely because it decides what are the rights of the parties as to such relief. * * *

"The following rule seems to be deducible from the authorities, viz: That a judgment, to be final, must not merely decide that one of the parties is entitled to relief of a final character, but must give that relief by its own force, or be enforceable for that purpose without further action by the court or by process for contempt."

While it is impossible to announce an inflexible rule on the subject, the following additional authorities, among the great number which might be cited, would seem to amply support our conclusion that under the circumstances of this litigation, the order of February 7, 1939, was not a final and appealable order. Portwood v. Outon, 1 B. Mon. 149; Green River Fuel Co. v. Sutton, 260 Ky. 288, 84 S. W. (2d) 79; Faulkner v. Faulkner, 270 Ky. 693, 110 S. W. 465; Adkins v. Carol Mining Co. et al., 281 Ky. 328, 136 S. W. (2d) 32; North American Refractories Co. v. Day et al., 284 Ky. 458, 145 S. W. (2d) 75.

Appellees in their brief argue for a reversal on cross-appeal as to the assessments made against two lots not among those which we have specifically mentioned; but the record fails to disclose that the appellees requested or were granted a cross-appeal.

So much of the judgment as awards a recovery against the City for any portion of the assessments against the Igoe and Brashear lots is reversed. That portion of the judgment which imposes liability on the City because of the alleged deficiency in value of the Kelly, Bailey, Hardesty, Benningfield and Combs lots is reversed with directions to set aside the submission and permit proof to be taken in order to determine their value at the time of their assessment, and for such further proceedings as the facts may warrant.