## Leslie v. First Huntington Nat. Bank.

Dec. 11, 1945.

146

Joe Hobson and Edward L. Allen for appellant.

Combs & Combs and Walter R. Prater for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

The Bank was plaintiff below and Joan Leslie defendant. Maud Leslie came in by intervening petition, and is appealing from two judgments, one sustaining an attachment against Joan's undivided interest in several tracts of land, claimed by intervenor to be her property;

the second from an order overruling her motion to set aside the judgment and refusing to permit an amendment.

D. B. Leslie died intestate in 1938, survived by the widow and seven children, including Joan, who, subject to rights of the widow, became the owner of an undivided interest in several tracts of land left by her father. Joan lived in Huntington, W. Va., and in August, 1938, bargained with the bank for the purchase of residence property for which she was to pay $6,500. She went to Prestonsburg on August 30, and obtained $500 from the mother with which she was to and did make initial payment on the Huntington property. Mrs. Leslie obtained the $500 from a bank, executing her note. On September 1st Joan paid the bank $500 and executed a note and trust deed for the balance, to be paid in monthly installments. She met payments until May 23, 1940, when she defaulted, owing a balance of $5,588.94, for which she executed a renewal. She failed to meet payment at due date, and in accordance with the trust deed, and under the laws of West Virginia, the trustee advertised and sold the property at public outcry to the bank for $2,248.21.

The foregoing facts were set up in the bank's petition filed December 16, 1940, seeking judgment for the balance due, an attachment on Joan's undivided interest and sale of a sufficient quantity to satisfy the debt. Attachment was issued and levied on the undivided interest. Joan was before the court by warning order, the attorney reporting inability to make affirmative defense.

At this point (May, 1941) Mrs. Leslie filed intervening petition, alleging that she had on August 30, 1938, furnished to Joan the $500, and in consideration of this and a note for $1,000 to be paid in installments, Joan executed a deed for her interest. She alleged that she at once took and has since held possession of the interest, and has been living on the property, claiming to be the owner. The crux of her pleading, and of the controversy, is that her ownership and possession was such notice to the bank as to estop it from asserting its lien created by levy, superior to her equity. The case hung until October, 1941, when Mrs. Leslie by counsel moved for submission; at the same term the bank an-

swered the pleading by specific denials. The case hung again until March, 1943. In the meantime Mrs. Leslie deposed, and took depositions of Joan and other children, joining Mrs. Leslie mainly in proof as to the execution and delivery of the deed, and in respect of Mrs. Leslie's occupancy.

From the proof, while appellee questions the transaction, and doubts the delivery of the deed, it may be concluded that the deed was executed and delivered. The doubt was expressed because it is shown that Mrs. Leslie was "careless" and overlooked recordation of the deed, which was lost or misplaced, and never found. She was unable to produce the cancelled check which she had given, and Joan said that her mother had paid the $1,000 balance, sometimes in cash and sometimes in checks, and that in each instance she gave receipts, none of which was brought forward.

The bank introduced no proof, but following the filing of depositions there was filed an agreement "as to the facts in this controversy, and as to what could be proved by the cashier of plaintiff, same to be read as evidence on trial of this case," which was signed by counsel for the bank, and Mrs. Leslie's then attorney of record. The portion which Mrs. Leslie later found objectionable, and made subject of a motion to strike, was that which stated that the officers of the bank, active in the negotiations with Joan, did not "have any information that Joan ever conveyed her interest to her mother until Mrs. Leslie had filed her intervening petition."

The bank answered the intervening petitions by denials, and affirmatively alleged that the claim of Mrs. Leslie was false and fraudulent, made for the purpose of concealing Joan's interest and hindering plaintiff in the collection of its debt. It denied the execution of the deed, but if executed it was never recorded. This pleading was controverted of record.

Upon submission the court adjudged that Mrs. Leslie was not entitled to relief, and gave the bank judgment, upheld the attachment and directed a sale of the interest of Joan. This judgment was entered October 23, 1943. The records show Mrs. Leslie to be sole appellant in both instances.

The second appeal arises in this manner: During the term at which judgment was entered, Mrs. Leslie moved to set aside the "agreement as to testimony" and judgment above mentioned. In support she filed affidavit, which stated that she had never authorized her then attorney to enter into such agreement; that he had never discussed the matter with her or Joan, and she did not know it had been signed until this day (Nov. 5, 1944). She said that the bank had actual knowledge of her purchase of Joan's interest long prior to the levy of attachment; that the checks which she had given Joan had been cashed by her at plaintiff bank or deposited to her credit, and that they showed that they were given for Joan's interest in the land; that at the time of the purchase from the bank Joan advised the bank of the conveyance. Mrs. Leslie stated that the "truth of these facts can be established by the affidavit of Joan Leslie," but we fail to find any such affidavit. As to the point of Joan's telling the bank of her transaction with the mother, she was asked on cross-examination: "Did you make any statement (to the bank) about your interest in the Banner Leslie estate in Floyd County?" and she replied, "I don't recall it; I didn't even tell them where I was from."

This motion was in the nature of one for a new trial on the grounds of newly discovered evidence, and it is clear that there was not a sufficient showing to justify a favorable ruling. No reason is shown why the movant could not have discovered the facts, if they existed, by the exercise of very little diligence. But the main argument of counsel for appellant relates to the "testimony agreement" signed by former counsel for Mrs. Leslie, and to the effect that, assuming the affidavit to be true, the attorney had no implied authority to make such a stipulation, citing World F. & M. Insurance Co. v. Tapp, 286, Ky. 650, 151 S. W. 2d 428; City of Hazard v. Duff, 295 Ky. 701, 175 S. W. 2d 357; South Mountain Coal Co. v. Rowland, 204 Ky. 820, 265, S. W. 320. We did say in the Tapp case, "the right to repudiate a stipulation is recognized where it is shown that it was inadvertently made, provided notice is given to the opposite party in sufficient time to prevent prejudice to him. [286 Ky. 650, 151 S. W. 2d 430.]" Karnes v. Black, 185 Ky. 410, 215 S. W. 191; 25 R. C. L. 1099. The Duff case has no application, but like the Rowland case

deals with the power of the court to set aside judgments on a proper showing. In the Tapp case the matter of repudiating the stipulation was an issue before trial and before judgment. There is authority for holding that counsel may enter into stipulation as to procedure, including evidence. 15 Am. Jur. 314, 50 C. J. 425; National Life & Acc. Ins. Co. v. Braswell, 209 Ky. 165, 272 S. W. 413; Douthitt v. Guardian Life Ins. Co. of America, 235 Ky. 328, 31 S. W. 2d 377; Bell County Board of Education v. Howard, 248 Ky. 766, 59 S. W. 2d 982. The agreed statement that appellee did not know of the conveyance, may or may not have had some effect. It is to be remembered that the alleged deed was not lodged for record, and was never produced on the trial. Since the deed was not recorded there is no question presented as to constructive notice. The bank was to be estopped only if it had actual notice, direct or implied. The only claim of actual notice was that Joan had informed the bank of the conveyance. She says she did not discuss this matter; the real question here is whether the bank, the encumbrancer, had information of such extraneous facts as to put it on inquiry as to whether or not appellant had purchased and was in possession of the interest. The court did not err in overruling the motion to strike a statement to the effect that the officers did not know that Joan "ever conveyed the lands * * * to her mother."

We next take up appellant's contention that the court was in error in rejecting the amended petition and counterclaim of Mrs. Leslie. Its disposition will answer the contention that the court should have set aside the judgment. The original petition was filed in December, 1940; three years later Mrs. Leslie tendered the pleading. The question is whether the court abused discretion in denying a filing. Civil Code of Practice, sec. 634; Levy v. Nelson, 212 Ky. 444, 279 S. W. 620. In this pleading she reiterates actual knowledge by the bank of the conveyance. In a second paragraph she alleged that Joan only owned an undivided 1/14 interest in tract No. 3, while the court adjudged a lien on an undivided 1/7 interest. In paragraph 3 she alleged ownership of houses located on tract No. 1, described in the levy and judgment, by reason of her purchase thereof in June, 1933, paying $360 for them, and spending $1,000 in improvement. She asked that should the Court hold her not the owner of Joan's interest she have a lien against

the same to the extent of $1,360. Counsel contends that the court in the exercise of a broad discretion should have permitted the filing, in support citing South Mountain Coal Co. v. Rowland, 204 Ky. 820, 265 S. W. 320. That case cites with approval on the point, Southern Ins. Co. v. Johnson, 140 Ky. 485, 131 S. W. 270. In these cases there had been default judgments, and in each we said substantially [204 Ky. 820, 265 S. W. 321]: "In exercising this broad discretion the question to determine always is whether the ends of justice will be best subserved, unless there has been upon the part of the applicant such laches as authorizes the court to turn a deaf ear to his proposal."

Mrs. Leslie alleged in 1941, and later testified that each of her children had inherited a 1/7 interest, and that she purchased Joan's interest; Joan said she inherited a 1/7 interest. Mrs. Leslie in her pleading does not allege that she was joint owner with Mr. Leslie of tract No. 3, conveyed to them in 1910, as shown by the levy description, but merely stands on the allegation that Joan did not own 1/7 interest. This plea does not serve to justify the conclusion that appellant is the owner of the remaining 1/14 interest. Counsel makes no argument as to the claim for lien by reason of the houses claimed on tract No. 1, and as we read that part of the pleading it is not clear just what her ownership or title is. It appears, according to her pleading, they were purchased in 1933, long before Mr. Leslie's death, and unless she had a better title than is shown by her pleading, the houses may belong to the estate. However this may be, it may be conceived that if appellant has good title to anything included in levy or judgment, there are methods by which, under appropriate action and proceedings, she may protect such interest. It may be noted that appellant nowhere and in nowise claims that the interest conveyed by Joan is not sufficient to protect both the bank debt and her claimed interest.

Aside from what is said above, every defense set up in the amendment was known or by little diligence could have been known to appellant when she first intervened. Her amendment in substance amounts to nothing more than a petition for a new trial, to which she was not entitled on any ground set out in section 340, Civil Code of Practice. The only two which might be considered are subsections 3 or 7, accident or surprise,

or newly discovered evidence. Neither is there shown any casualty or misfortune or misprision which could justify new trial under Civil Code of Practice, section 518. On this point we are not supplied by appellant with authority, but as supporting appellee's contention reference may be had to Bannon v. Watson, 207 Ky. 23, 268 S. W. 573, 575; Louisville & N. R. Co. v. Jolly's Adm'x, 232 Ky. 702, 722, 23 S. W. 2d 564, and cases cited, and Home Insurance Co. v. Stroud et al., 244 Ky. 315, 50 S. W. 2d 934.

On the question of sufficiency of notice we have little difficulty in concluding that claim fails. Mrs. Leslie in pleading claimed that she "took possession of all of said property and was living on the same ever since its conveyance by Joan." In her testimony she was asked, "You say you live on the land that was bought from Joan?" and she replied, "No sir, I didn't say that; my house was not on it, it was her undivided interest in her father's estate that I bought." She may not have intended this answer, but whether so or not, she was living where she and her husband lived before his death. Mrs. Leslie did prove by her own testimony and that of her children, that she had possession of the property, claimed it as her own; that she by some arrangement with the children, or without objection, had collected rent on some of it. It is upon these facts that appellant bases her claim that the bank was charged with notice of her title.

Counsel for appellant cites Russell's Ex'r v. Moore's Heirs, 3 Metc. 436, 60 Ky. 436, and Estes v. Gatliff, 291 Ky. 93, 163 S. W. 2d 273, as being conclusive, and several other opinions of this court "which announce the same rule." The latter cases, as we observe, announced the correct rule, but the facts in all are different from those here presented. Strong reliance is had on the Russell case, in which it appeared from the meager facts stated, that a tract of land and some slaves had been assigned to Mrs. Moore as dower in the estate of her deceased husband, and she was in possession when her son sold her his remainder interest. A creditor subsequently had execution against the son's interest in the land and slaves, and the question presented was whether the title of the purchaser at execution sale prevailed over the equity of Mrs. Moore. The court found this to be at that time a new question, and resorted to

English authorities for light, citing Daniels v. Davidson, 16 Vesey 250, as basis for its conclusion that where a tenant is in possession under lease, one purchasing a part of the estate is bound to inquire upon what terms that person is in possession, clearly a landlord and tenant case. This opinion is cited with approval only once since its publication so far as we can find, then in Estes v. Gatliff, 291 Ky. 93, 163 S. W. 2d 273, 275, in support of the statement, ''The lease was not recorded until September 19, the same day Gatliff recorded his deed. But the allegations of actual notice and open and public construction of the improvements, of which he had knowledge, were sufficient to charge him with notice.'' We found as a matter of fact that at the time the property was sold to Gatliff, plaintiff was in the ''open and notorious possession of the premises and engaged in the construction of the bulk station and improvements provided for in the contract, of which the defendant Gatliff had actual notice.'' The language used here indicates that the rule is not so narrow as that laid down in the Russell case, which if applied would mean that possession of Mrs. Leslie as dowress was a sufficient notice of her purchase of Joan's interest.

There had been here neither a setting aside of dower nor partition up to the time of the levy. Mrs. Leslie was not a tenant in the ordinary use of the word; she was holding not under contract but by reason of the law which gives her dower. The English case, upon which the holding in the Moore case was based, involved the relation of landlord and tenant.

In Farmer v. R. C. Tway Coal Co., 204 Ky. 356, 264 S. W. 743, the court announced a rule, which to say the least broadened the rule laid down in the Russell case. There the father of children, some infants, conveyed land upon which they resided. At a later time he conveyed mineral rights to Cornett, and he to Hall who executed a lease to appellee. At a later date the children of the first grantors brought suit to quiet their title to the land or a part of it, relying on an unrecorded deed. One claim of appellee's was that they had no notice of the alleged conveyance, which was met by the assertion that it had purchased with notice, because of the presence of appellants with their father (at times) on the land, which was sufficient to put Cornett on inquiry. We conceded that the possession of land by a

third person is sufficient to put a subsequent purchaser on inquiry, but said, "The possession should be open, exclusive, and not inconsistent with the record title, or such as to deceive the public" (citing cases). Here the record title was in D. B. Leslie. In Devlin on Deeds, 1407, it is said: "The possession to have the effect of notice must be of that character that the attention of the purchaser is at once called to it." (1408) "The possession and occupation must be open, distinct, exclusive and unequivocal. * * *. It must be such as to be inconsistent with the title upon which the subsequent purchaser relies." This rule seems to prevail in a majority of the jurisdictions. 66 C. J. 1172; Strong v. Strong, 128 Tex. 470, 98 S. W. 2d 346, 109 A. L. R. 739; Wrede v. Cloud, 52 Iowa 371, 3 N. W. 400; Mullins v. Butte Hdw. Co., 25 Mont. 525, 65 P. 1004, 87 Am. St. Rep. 430; Devlin on Deeds, supra; Townsend v. Little, 109 U. S. 504, 510, 27 L. Ed. 1012, 1014.

Here we fail to find any fact or circumstance which would put the appellee to inquiry as to Mrs. Leslie's purchase. There was no change of pre-existing conditions or circumstances. Prior to the levy of the attachment, and at all times, the possession of Mrs. Leslie was not exclusive. Where possession is not exclusive, but in connection with occupancy of another who is holding under record title, the possession of others will be referable to the possession of the parent or the owner of the record title, and is not such a possession as would require the purchaser to make inquiry as to the nature of their possession or any hidden equities which might exist. Story v. Grayson et al., Ark., 185 S. W. 2d 287.

We said in Philips v. Hopkins, 208 Ky. 769, 271 S. W. 1075, 1076, where appellants were living on the land in question with their father: "The possession of appellants, if any they had, was as hidden and secret outside of the family circle as was the unrecorded deed, and was neither open nor notorious. * * * Hence their possession, if any, was neither actual nor such as would imply they were holding or claiming same against all the world or at all."

We are of the opinion that the judgments must be and they are affirmed.