## Insurance Co. of North America v. McCraw.

(Decided Oct. 23, 1934.)

GORDON, LAURENT & OGDEN and T. M. GALPHIN, Jr., and BLUE & ELDRED for appellant.

LISANBY & LISANBY for appellee.

OPINION · OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Insurance Company of North America issued and delivered, for a paid premium, to U. B. McCraw, an insurance policy on a stock of merchandise, insuring him against loss by fire for a period of one year from September 29, 1932, in a sum not to exceed $1,200. The policy covered in this language, "the merchandise consisting chiefly of clothing, hats, shoes, dry goods & notions, and such other merchandise as is usually kept for sale in country stores; and provided the insured is legally liable therefor, this item shall also cover such

merchandise held in trust, or on commission, or sold but not delivered; all only while contained in the above-described building. * * * It is made a condition and part of the consideration of this policy, that in the event of loss, this company shall not be liable for an amount greater than three-fourths of the actual cash value of the property covered by this policy at the time of such fire.''

The merchandise was destroyed by fire October 9, 1932. John Ed. Young was the agent of the Insurance Company of North America, who solicited and secured the policy and accepted the premium.

From in 1930 to March, 1931, McCraw and Hyman Goldsmith were partners in a stock of dry goods at Madisonville, Ky. In December, 1930, they opened another store at Princeton, Ky. They closed it in March, 1931, and moved their stock to Marion, Ky., where they opened a store which they operated from March, 1931, to December, 1931. McCraw claims he had put in $850 when he and Goldsmith began business, and on a settlement between them, they divided the merchandise, McCraw taking out of the stock $1,150 worth of goods, which was paid by the firm accounting to him for the $850 and by the execution of his notes to Goldsmith for $300. In the settlement with Goldsmith, the value placed on the merchandise taken by him was $1,150. It should be observed that in his testimony at one time he stated the amount of these notes was $350. He claims that an inventory was made of the portion obtained by him, on or about the time of the settlement with Goldsmith. In December, 1931, McCraw had his portion moved to another building in Marion where he operated until August, 1932; then he moved it to a room in his residence, consisting of four rooms, where he attempted to sell from the stock on hand for a period of six weeks, when he moved it to Fredonia, where it was destroyed by fire. At the time he moved it to Fredonia, it was carried in a one and one-half ton Ford truck. While he operated at Fredonia he used one side of a building for his merchandise; the other side was used for a grocery store of D. M. Maxwell. His merchandise was in this room at the time it was insured and also at the time it was destroyed by fire. Young, the agent of the insurance company, went on Thursday, before the policy was issued and delivered, to McCraw's place of business to solicit his insurance. At that time, McCraw informed

him his stock was of the value of $1,500 or $1,600. Thereupon with his consent, Young issued a policy for $1,100. The following Monday morning, Young returned to McCraw's place of business, when he informed Young that he and Nathan Ward, the person in charge of Maxwell's business, since Thursday, had invoiced his (McCraw's) merchandise, and the invoice value was $1,615.81. Accordingly, the policy now involved was issued and delivered by Young in lieu of the $1,100 policy.

Prior to the issuance of the first policy McCraw had received and had on hand $288.75 of "wear-u-well shoes, received, and in his possession," on commission. In making the invoice, the $288.75, the invoice price of the "wear-u-well" shoes, was included; also, the fixtures on hand at the price of $117.85, making the total inventory $1,615.81.

In his petition, McCraw fixed the value of the "stock of goods, consisting of clothing, shoes, dry goods & notions," at $1,547.00, and the fixtures at $117.85. The petition does not disclose that the $288.75, the invoice price of the "wear-u-well" shoes, was included in the $1,547. The fixtures were not covered by the policy, and to recover for them McCraw charged that it was intended by the parties that the policy should cover the fixtures; but by mistake they were left out of it. The right to recover for the fixtures and the liability of the company therefor were eliminated by a peremptory instruction of which no complaint is made by a cross-appeal.

To entirely escape its liability, the insurance company traversed the allegations of the petition; pleaded the merchandise was set fire to and burned by plaintiff, and others unknown to it, and a fraudulent overvaluation of the merchandise in the proof of loss. The plea that it was voluntarily burned was withdrawn. Hence, this question is not now involved.

On a trial before a jury a verdict was returned for McCraw for $1,200, the face of the policy.

It is conceded that the three-fourths value clause of the policy controls the recovery of McCraw and the liability of the company. It is not disputed that the policy covers "such merchandise held in trust or on commission," "provided the insured is legally liable therefor." An examination of the petition discloses that McCraw's cause of action is premised on his sole ownership of the

merchandise. It is not disclosed by any statement in the petition, nor by the evidence, that McCraw was legally or otherwise liable to the consignor for the $288.75, the invoice price of the "wear-u-well" shoes. The allegation of the petition that he was the owner of the merchandise at the time of its destruction by fire cannot be interpreted as covering the item of $288.75 which his testimony shows consisted of the "wear-u-well" shoes in his possession "on commission" at the time of the fire, nor can it be interpreted as sufficient to cover this item so as to entitle him to recover therefor. The insurance company offered a peremptory instruction at the close of the evidence in behalf of McCraw, and even if it be conceded it was not entitled to it, the given instruction should not have been so written to authorize a verdict for the $288.75, the invoice price of the "wear-u-well" shoes. With it and the value of the fixtures deducted from the $1,615.81, reduces the invoice value of McCraw's merchandise to $1,209.21, and when the three-fourths value clause is applied to this amount, the largest sum which he was entitled to recover by the terms of his policy was $906.90, whereas the amount fixed by the verdict of the jury was $1,200.

It is earnestly and vigoroulsy argued by the insurance company that in his proof of loss, McCraw made false statements of material facts in regard to the value of the merchandise on hand at the time of the fire and that he knew that such statements were false, or should have known it, and the evidence establishes these facts so clearly and convincingly, the insurance company was entitled to a peremptory instruction on the defense of "false over-valuation," in the proof of loss.

McCraw insists that if any mistake was made in his proof of loss, it was an innocent one and that a reasonable overestimate of the value does not constitute a false statement.

The established rule is:

"To vitiate a fire policy, statements under oath in proof of loss or the accompanying affidavits must be intentionally false and disclose a purpose fraudulently to overvalue or contain statements as to items having no existence; a mere innocent mistake of the existence of items or articles or an exaggerated estimate of value is insufficient."

New York Underwriters' Ins. Co. v. Mullins, 244 Ky. 788. It becomes our duty to determine whether the established facts bring this case within this accepted rule.

In every case where the defense is fraudulent overvaluation of the personal property included in the furnished proof of loss, and the evidence is conflicting, the question is for the jury. The testimony of Ward and McCraw is that they invoiced the stock of goods, properly and fairly, at and by the original cost price when fixing the invoice value thereof. Their testimony is neither disputed nor denied. However, the merchandise, before it was invoiced by them, had been in stock for a period of time and had been moved from place to place, and inevitably depreciated.

The term "cash value," as it is used in the policy, means "'market value,' and 'market value' is such price, considering the original or wholesale cost price with freight added, and the quantity, quality, material, finish, style, and shelf-worn condition, if any, of the merchandise at the time of its destruction by fire, which it will bring when offered for sale by one who desires to sell, but is not compelled to do so, and is bought by one who desires to purchase, but is not compelled to have it." New York Underwriters' Ins. Co. v. Mullins, 244 Ky. 788, 52 S. W. (2d) 697, 703; Springfield F. & M. Ins. Co. v. Shapoff & Goldstein, 179 Ky. 804, 201 S. W. 1116; Western Assur. Co. v. Ray, 105 Ky. 523, 49 S. W. 326, 20 Ky. Law Rep. 1360; Conn. Fire Ins. Co. v. Union. Merc. Co., 161 Ky. 718, 171 S. W. 407; Hanover Fire Ins. Co. v. Coffman, 218 Ky. 568, 291 S. W. 725; Springfield F. & M. Ins. Co. v. Blevins, 234 Ky. 188, 27 S. W. (2d) 699; Security Ins. Co. v. Rosenberg, 227 Ky. 314, 12 S. W. (2d) 688.

In fixing the value of the merchandise in the proof of loss, the failure of McCraw to value it according to the sum at which he had taken it in his settlement with Goldsmith, plus the sum of the price of the merchandise subsequently purchased by him and added to the stock, the failure to take into consideration its depreciation between the time it was acquired and the date of the proof of loss, and the inclusion of the invoice price of the "wear-u-well" shoes and the fixtures, are not conclusive evidence of an intentional false and fraudulent overvaluation.

It was shown by the evidence that McCraw had added to the stock a purchase of $131.86; the sales from

December 31, 1931, to September 30, 1932, were $273.06. He claims his profit was 25 per cent. of the sales, or $68.27, which deducted from the total sales left $204.79, the reduction of his stock by total sales, less profit.

The insurance company argues that the fair market value of the merchandise must be determined by the $1,150, the value at which he took it on his and Goldsmith's settlement, and that the $131.86, when added to the $1,150, fixes the market value at $1,281.86, and when the $204.76 is deducted from this sum, leaves $1,077.07, the market value of the stock on hand at the time of the fire. By deducting the $1,077.07 from the $1,615.81, the amount of the invoice, as made by McCraw and Ward, the insurance company premises its argument that the proof of loss furnished it by McCraw was falsely made for the fraudulent purpose to include overvaluation. This argument overlooks the inclusion in the proof of loss of the items of $288.75 and $117.75, the valuation of the "wear-u-well" shoes and the fixtures.

Counsel of the parties differ as to the law respecting his right to include the item of $288.75, as merchandise on hand covered by the policy. Learned counsel so disagreeing, it should not be said that McCraw, by the inclusion of it in the proof of loss, is guilty of intentionally and fraudulently overvaluing his merchandise within the meaning of these terms when used in connection with the topic of overvaluation in such cases. It is very apparent the inclusion of the value of the fixtures in the proof of loss was so done in good faith, believing they were covered by the policy.

It is very clear from the evidence that the inclusion in the proof of loss of the value of the "wear-u-well" shoes and fixtures was an innocent mistake or a legitimate opinion of his right to include in the proof of loss the value thereof. McCraw's right to recover under the policy is not confined to the $1,150 and the $131.86. He is entitled to recover the market value to be determined by competent evidence. The sum he paid Goldsmith, the inventory made by McCraw and Ward, and the knowledge of the witnesses who were familiar with the quantity, quality, material, finish, style, and shelfworn condition at or near the time of their destruction and the original cost price of such goods, were competent evidence on the question of the market value at the time of the fire, and also competent as to the issue

846

raised by the plea of false and fraudulent overvaluation in the proof of loss.

On the evidence disclosed by the record, the insurance company was not entitled to a peremptory instruction as to the issue of overvaluation in the proof of loss.

Respecting McCraw's right to recover the item of $288.75 (the invoice price of the "wear-u-well" shoes), the evidence is too indefinite to determine whether he was legally liable therefor to the consignor, even if his pleading were sufficient, to authorize a recovery as to this item. Inasmuch as the policy included the liability for the loss of the "wear-u-well" shoes, consigned to McCraw on commission, "provided the insured was liable therefor," on a return of the case, if he desires to do so, he may amend his petition according to the facts and in the furtherance of justice.

The statement in the petition that he was the sole and unconditional owner thereof does not preclude a recovery for the "wear-u-well" shoes, on a sufficient pleading supported by adequate evidence. Globe & Rutgers Fire Ins. Co. v. Frankfort Distillery, 226 Ky. 706, 11 S. W. (2d) 968.

A motion was entered to dismiss this appeal as a delay case. The motion is overruled.

Wherefore, the judgment is reversed, with directions to award the insurance company a new trial and for proceedings consistent with this opinion.